In the Matter of MAGNUS HARMONICA CORPORATION, Debtor.

No. B.700–55.

United States District Court
D. New Jersey.

March 4, 1958.

Joseph F. Walsh, Newark, N. J., for trustee.

Max L. Rosenstein, Newark, N. J., for Credit Industrial Co.

MEANEY, District Judge.

The Referee has certified two questions for review.

(1) Was error committed in refusing to order a return to the Trustee of overcharges made by Credit Industrial Company prior to December 15, 1955?

(2) Was error committed in refusing to allow Credit Industrial Company interest or other charges subsequent to December 15, 1955?

### Factual Background

Credit Industrial Company acted as a factor. It obtained an assignment of accounts receivable by Magnus. This agreement exacted a certain percentage of interest daily from Magnus. Credit Industrial overcharged Magnus small amounts on each computation period by aggregating the percentage stipulated instead of making a daily charge. The Referee decided to allow Credit Industrial to hold the funds thus obtained because the overcharges were paid without protest by Magnus. The Referee reasoned that the Trustee could not protest where Magnus had not and where no fraud had been shown. Now Credit Industrial seeks interest payments on the sums so exacted. The Referee denied this demand because this would constitute a charge of interest upon interest.

Both the Trustee and Credit Industrial protest the Referee's decision. The Trustee contends that under New York law the factor has no right to an overcharge of interest regardless of whether or not there was protest by the debtor and that an agreement to pay interest on interest is void. Credit Industrial contends that a bankruptcy court has no equity powers by which it can disallow a "legal" claim for interest on the fund resulting from the overcharge.

### I.

The Trustee alleges a right to a return of all overcharges made by Credit Industrial prior to December 15, 1955. It is contended that these charges are based on a computation of interest totally at variance with that stated in the factoring agreement. Credit Industrial acknowledges that the rate charged by it is effectively more than that agreed upon (hearing January 30, 1957, pages 21–27 transcript, especially page 27). The Referee, however, could find no fraud; nor could he find a protest by Magnus concerning the overcharge. The Referee allowed the factor to retain these gains.

The Trustee is not in accord with this finding and contends that New York law should apply, and that thus the agreement is void and no interest is chargeable. The Referee does not state which law he chooses to apply, but he does employ a rule of law enunciated in his conclusions of law, which is:

"In the absence of fraud, which is not an issue here, the trustee cannot rectify the mistakes of the bankrupt. Since the bankrupt never questioned the overcharges, the trus-

tee is without power to do now what the bankrupt should have done during the years the contract was in effect."

This point is well taken and finds support in the law of this circuit, in other federal courts [1] and in Collier on Bankruptcy.[2] Collier, however, adds this caveat:

"In view of the paramount purpose of bankruptcy proceedings, such waiver should not be implied without clear necessity, and it is certainly subject to close scrutiny as to the presence of a fraudulent or collusive intent." Supra, p. 1250.

The Referee in his 9th finding of fact states that Credit Industrial provided monthly statements to Magnus under the agreement and that Magnus never protested; nor did Magnus complain that the statements were erroneous.

The Referee holds that this constitutes a waiver by Magnus of its rights to the return of the interest money overcharged. The Court agrees with the Referee's finding of fact in this regard and so the question of what rights would have accrued to the Trustee does not arise since the bankrupt has waived whatever rights he had on the question of the overcharge.

█ A reading of Exhibit C–1, the factoring agreement, points up the fact that there is no provision for the payment of interest on interest or on any other so-called non-cash advance. Therefore, whether or not New York law would avoid an agreement to pay interest on interest is immaterial because there is no such agreement in C–1. Consequently, the Referee rightly never meets the question of New York law in this regard. He correctly applies the federal law concerning inaction by a bankrupt to the bankrupt's prejudice. That is why the Trustee's citation of New York law,

though it might well be correct, is inapplicable.

The Court affirms the Referee's finding as to Credit Industrial's right to the interest overcharges collected prior to December 15, 1955.

## II.

The Referee has refused to allow Credit Industrial interest on this fund subsequent to the date of filing of the petition in bankruptcy (December 15, 1955).

The question of interest on the debtor's obligations, subsequent to the date of filing, has been the subject of much controversy, especially since the decision of the Supreme Court in Vanston Bondholders Protective Committee v. Green, 329 U.S. 156, 67 S.Ct. 237, 91 L.Ed. 162.

█ The general rule is that in bankruptcy, interest on the debtor's obligations, secured and unsecured, ceases to accrue at the beginning of the proceedings. § 63 Bankruptcy Act, 11 U.S.C.A. § 103; Vanston Bondholders Protective Committee v. Green, supra; Pacific States Corporation v. Hall, 9 Cir., 166 F.2d 668; Littleton v. Kincaid, 4 Cir., 179 F.2d 848, 27 A.L.R.2d 572; United States v. General Engineering & Mfg. Co., 8 Cir., 188 F.2d 80; In re Lykens Hosiery Mills, D.C., 141 F.Supp. 895.

█ This general rule has three major qualifications:

(1) Where the estate of the debtor is sufficient to pay all of his debts, including interest, interest may be allowed to the date of payment. Johnson v. Norris, 5 Cir., 190 F. 459; Brown v. Leo, 2 Cir., 34 F.2d 127.

(2) Where income accrues on the security after bankruptcy, it may be applied to interest on the debt accruing after such date. Sexton v. Dreyfus, 219 U.S. 339, 31 S.Ct. 256, 55 L.Ed. 244.

(3) Lastly, there is the situation which obtains in the case at bar. Where

---

1. The bankrupt waived his right to object and ratified the overcharges by paying the factor until the time of filing. The cases hold that the trustee stands in the bankrupt's shoes. In re Solomon, D.C.,

40 F.Supp. 62; Kessler v. Jefferson Storage Corporation, 6 Cir., 125 F.2d 108.

2. Collier on Bankruptcy, 14th Ed. Vol. 4, p. 1249.

the value of the security exceeds the amount of the debt, the court in the exercise of its equitable jurisdiction may allow such interest as will amount to a balance of equities between creditors and debtor, but in no event to exceed the value of the security. Vanston Bondholders Protective Committee v. Green, supra; Beecher v. Leavenworth State Bank, 9 Cir., 192 F.2d 10; In re Macomb Trailer Coach, 6 Cir., 200 F.2d 611; Castaner v. Mora, 1 Cir., 234 F.2d 710.

■ The cases cited, especially Vanston Bondholders Protective Committee v. Green, point up the fact that this court has a right to balance equities in this matter. The question is not purely legal and divorced from equitable considerations. The Bankruptcy Court is a court of equity. Pepper v. Litton, 308 U.S. 295, 60 S.Ct. 238, 84 L.Ed. 281.

■ Thus, the Referee faced these facts:

(1) There is the irremediable fact that there were overcharges by Credit Industrial.

(2) That there was a demand by the factor that he be paid interest on the overcharged interest.

The Referee balanced the equity of the factor's demand with the equity principles governing bankruptcy distribution. He found Credit Industrial's position wanting in equity. Under the circumstances revealed by the record below and by the passages cited by the Trustee in his brief, the allowance of interest on accrued interest would be inequitable and violative of the principles governing the administration of the Bankruptcy Act.

■ New York law, argued on brief by the attorney for the Trustee, is not material to the disposition of the question of interest upon interest. Although it is true that the contractual rights of the parties are governed by New York law, "When and under what circumstances federal courts will allow interest on claims against debtors' estates being administered by them has long been decided by federal law." Vanston Bondholders Protective Committee v. Green, supra,

329 U.S. at page 163, 67 S.Ct. at page 240.

Hence, this Court affirms the Referee's determination that interest on the overcharges should not be allowed.

The sole remaining issue in dispute on this certificate of review is the matter of attorney's fees and costs.

Paragraph 16 of Exhibit C–1, which is the factoring agreement between Magnus and Credit Industrial, specifies only that attorney's fees and costs will be paid by Magnus in the event that the stated contingencies occur. But Exhibits C–2 and C–4, which are chattel mortgages, specify the usual 15%-of-the-debt-but-not-more-than-$5,000 provisos. Further to complicate the matter, the factoring agreement specifies that the law of New York will govern its provisions while the chattel mortgage makes no mention of the parties' intention to be governed by the law of a particular state but merely states the 15% rate. The chattel mortgages are registered in Essex County on machinery, etc., located here and were drawn and entered into here, and were sworn and attested to here.

The attorney for Credit Industrial has sought to enforce the rights of his client under both agreements.

So, the question of the fee must be disposed of in two steps.

I. Fee under the Chattel Mortgages

■ The 15% proviso is a contract for a fee. The Referee cites the case of Bank of Commerce v. Markakos, 1956, 22 N.J. 428, 126 A.2d 346. That case held that a contract for fees was not enforceable. But in Maryland Credit Finance Corporation v. Reeves, 45 N.J.Super. 205, 132 A.2d 36 (N.J.App. Div.1957), the Superior Court purported to limit the Markakos case to its facts or at least to limit the dictum of Chief Justice Vanderbilt concerning the validity in general of fee contracts. In the case of In the Matter of Pack-It, Inc., D.C., 158 F.Supp. 148, the Court discusses just this problem and finds Reeves, supra, to be the law of New Jersey. This Court agrees with this holding. It finds

the New Jersey rule to be that a contractual stipulation of fee will be allowed if the Court finds that the amount stipulated is reasonable. Ultimately then, it is the Court which passes upon the propriety of the fee.

 As to the enforceability of such a contract in the federal courts, we are again referred to local law. Manufacturers' Finance Co. v. McKey, 294 U.S. 442, 55 S.Ct. 444, 79 L.Ed. 982, cited in Pack-It, supra, 158 F.Supp. at page 152.

II. The Factoring Agreement

Paragraph 16 of Exhibit C–1, the factoring agreement, specifies payment of attorney's fees on the happening of the expressed contingencies. But paragraph 23 of the same agreement specifies that New York law shall govern its provisions.

A reading of the exhibits and the transcript of the Credit Industrial phase of this case does not reveal that the Court can apply New Jersey law as was accomplished by Judge Goodrich in the case of In re Rosen, 3 Cir., 1946, 157 F.2d 997, certiorari denied Fisch v. Standard Factors Corp., 330 U.S. 835, 67 S.Ct. 972, 91 L.Ed. 1282, for the very reasons he states. In that case there was obviously evidence that the contracted transactions, assignments, transfers, etc. took place in New Jersey. Here there is no such evidence. In fact the evidence is uncontradicted that the agreement was effected in New York, and the obligations of Magnus were to be met there.

So, under the principles of the New Jersey conflicts of laws rules (See Klaxon Co. v. Stentor Co., 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477), New York law will be applied. Colozzi v. Bevko, Inc., 1955, 17 N.J. 194, and the cases cited therein at p. 202, 110 A.2d 545, at page 548.

The New York cases reveal that contracts calling for payments of fees and costs will be enforceable as any other contractual obligation. Commercial Investment Trust v. Eskew, 1925, 126 Misc. 114, 212 N.Y.S. 718; In re Mercantile Dye Works, 1941, 177 Misc. 454, 31 N.Y. S.2d 296; Manufacturers Trust Co. v. Cavell, 1954, 206 Misc. 818, 135 N.Y.S.2d 566. All of these cases dealt with contracts specifying the 15% fee proviso not contained in the instant agreement. In this agreement the right to be paid has been contracted and not the amount. Commercial Investment, supra, and the other cases cited above on this point went so far as to allow 15%. However, because the specific fee is not set forth here, the parties, of course, are deemed to have agreed to a just and reasonable fee. Here, again, the Referee is vested with a superior knowledge of the pertinent facts.

Therefore, the question of determining the attorney's fee under the factoring agreement made in New York will be remanded to the Referee for determination.

In all other respects, the Referee's findings of fact and conclusions of law are affirmed.

Let an appropriate order be submitted.