SAMUEL S. SALITAN, *ET AL.*, t/a CREDIT INDUSTRIAL COMPANY, PLAINTIFFS-RESPONDENTS, v. FINN H. MAGNUS AND ELSIE A. MAGNUS, DEFENDANTS-APPELLANTS.

Argued September 8, 1958—Decided October 6, 1958.

*Mr. Israel B. Greene* argued the cause for defendants-appellants (*Messrs. Israel B. Greene* and *Murry D. Brochin* on the brief).

*Mr. Harry H. Margolis* argued the cause for plaintiffs-respondents (*Mr. Max L. Rosenstein,* attorney).

The opinion of the court was delivered by

PROCTOR, J. The Law Division of the Superior Court denied the defendants' motion for an order permitting them to file a third-party complaint. The Appellate Division affirmed. 48 *N. J. Super.* 168 (*App. Div.* 1957). We granted defendants' petition for certification. 26 *N. J.* 303 (1958).

On January 26, 1956 Samuel S. Salitan *et al.,* trading as Credit Industrial Company, a partnership, instituted an action in the Law Division of the Superior Court against the defendants, Finn H. Magnus and Elsie A. Magnus, his wife, as guarantors for certain secured debts of the Magnus Harmonica Corporation. Prior to this action, on December 15, 1955 the corporation had filed a chapter X reorganization petition in the Federal District Court for New Jersey, and on June 25, 1956 was adjudged a bankrupt.

Mr. and Mrs. Magnus were respectively president and secretary of the corporation. The debts, which are the subject of this suit, stem from loans by the plaintiffs to the corporation secured by chattel mortgages, and from advances by the plaintiffs to the corporation on a factoring agreement secured by assignment to the plaintiffs of the corporation's accounts receivable. Since the commencement of this action the bankrupt's assets pledged pursuant to the factoring agreement and secured by the chattel mortgages have been liquidated by the trustee in bankruptcy, and the proceeds thereof

have been applied by him to discharge the principal due plaintiffs under the guaranteed obligation. However, the referee in bankruptcy disallowed the plaintiffs' claim to approximately $29,000 in post-bankruptcy interest and counsel fees, although the assets of the bankrupt estate subject to the plaintiffs' liens are more than sufficient to pay the above amount.

The referee found that the plaintiffs had overcharged the corporation on interest payments due under the factoring agreement. But because the corporation had not objected to this practice and since no fraud was present, the referee concluded that the trustee could not object and thus permitted the plaintiffs to recover interest to December 15, 1955, when the bankruptcy petition was filed. The referee denied the plaintiffs any interest or other charges accruing subsequent to that date, holding that "this matter seems to qualify for a balancing of the equities" and that it would be inequitable to allow "interest on interest items." On review, the Federal District Court affirmed the referee's findings as to the questions relating to interest. The court held that the awarding of interest in bankruptcy proceedings is a matter to be determined by the referee under federal law, consonant with a balancing of the equities between the creditors and debtor. *In re Magnus Harmonica Corporation,* 159 *F. Supp.* 778 (*D. C. N. J.* 1958). However, the matter was remanded to the referee to determine the question of counsel fees. Appeals by the plaintiffs and the trustee from the judgment of the District Court are now pending in the United States Court of Appeals. At the oral argument before this court it was agreed that counsel fees are no longer in controversy before us and that the amount claimed by the plaintiffs is now the same as they are seeking in the federal courts, approximately $23,000. Plaintiffs allege that this amount "represents a calculated balance after crediting defendants with all payments made to plaintiffs under the contracts from which liability springs."

On April 12, 1956 the Federal District Court, pursuant to defendants' application, enjoined the plaintiffs from further

prosecuting the present action. The United States Court of Appeals stayed the injunction on May 31, 1956, *In re Magnus Harmonica Corporation,* 233 *F.* 2*d* 803 (3 *Cir.* 1956), and on October 31, 1956 reversed the judgment of the District Court, thus permitting plaintiffs to proceed in this action. 237 *F.* 2*d* 867 (3 *Cir.* 1956). In the meantime, on July 18, 1956, the referee authorized the defendants to apply to make the trustee and the bankrupt estate third-party defendants in the Superior Court action. The order permitted the defendants "to allege therein [third-party complaint] that the bankrupt and its estate are primarily liable on the suretyship obligations forming the basis of the said suit and for such incidental relief as may be proper." However, the order contained the following limitation: "* * * process of execution shall not issue and no levy shall be made against the estate of the said bankrupt, on any judgment entered in said action in the State court, without the prior approval of this [bankruptcy] court, on notice to the Trustee in bankruptcy of the Bankrupt." The defendants then moved on August 7, 1956 before the Superior Court for an order granting them leave to make the trustee and the bankrupt estate third-party defendants to a third-party complaint and for an order staying all proceedings in the plaintiffs' action.

The proposed third-party complaint which accompanied the motion joined the bankrupt corporation, its trustee, and the plaintiffs as third-party defendants. It alleged that "defendants [third-party plaintiffs] are sureties on the plaintiffs' claims and as such are entitled to be exonerated and discharged therefrom by the third party defendants [bankrupt corporation and its trustee] * * * out of the assets in his [trustee's] possession pledged to secure plaintiffs claims * * * and that the plaintiffs be compelled to first resort to such pledged assets before seeking satisfaction from the defendants." The defendants also asserted that the plaintiffs' action is "oppressive and vexatious, and is not necessary for plaintiffs' protection," and they prayed that the action be "stayed pending the sale of the said pledged

assets, and that the said corporation's bankruptcy trustee be decreed to pay said claims, together with lawful interest thereon and costs, out of the proceeds of such sale." The accompanying affidavit of Finn H. Magnus asserts: "Neither my wife nor I are in a financial position to pay any judgment that may be rendered in this cause. Any such judgment, or attempted execution would only drive us into bankruptcy." Defendants' motion was denied by an order dated August 10, 1956. The Appellate Division granted defendants leave to appeal, and on December 24, 1957 affirmed the order of the Law Division, concluding that "we cannot say that in denying such relief the trial court clearly erred in the exercise of its discretion." The Appellate Division denied a rehearing on January 24, 1958.

The grant or denial of a motion by a defendant to proceed under *R. R.* 4:14–1 against a third party is a matter left to the sound discretion of the trial judge. *Reinhardt v. Passaic-Clifton Nat. Bank & Trust Co.,* 16 *N. J. Super.* 430, 438 (*App. Div.* 1951), affirmed 9 *N. J.* 607 (1952); *Bray v. Gross,* 16 *N. J.* 382, 386 (1954). In exercising its discretion the court should consider whether the granting of the motion will unduly delay or prejudice the rights of the original parties. See *Schnitzer & Wildstein, N. J. Rules Service* A IV–354 (1954); *cf. R. R.* 4:37–3. The exercise of this discretion will be interfered with by an appellate tribunal only when the action of the trial court constitutes a clear abuse of that discretion. See *In re Koretzky's Estate,* 8 *N. J.* 506, 535 (1951).

The contract upon which the plaintiffs predicate their action provides that the defendants agree:

"that their liability hereunder is direct and unconditional and may be enforced without requiring [plaintiffs] to resort to any other right, remedy or security."

The defendants concede that their undertaking is a guarantee of payment under which the plaintiffs have a right to proceed directly against them as sureties and cannot

be compelled to first sue on the primary obligation. See *Superior Finance Corp. v. John A. McCrane Motors, Inc.,* 116 *N. J. L.* 435 (*E. & A.* 1936). However, the defendants contend that a surety may even before judgment call upon the principal debtor to exonerate him by paying the claim. The right of a surety to equitable protection without first paying the debt has often been recognized by our courts. *Irick v. Black,* 17 *N. J. Eq.* 189 (*Ch.* 1864); *Philadelphia & Reading R. Co. v. Little,* 41 *N. J. Eq.* 519 (*E. & A.* 1886); *Holcombe v. Fetter,* 70 *N. J. Eq.* 300 (*Ch.* 1905); *Greenberg v. Leff,* 104 *N. J. Eq.* 502 (*Ch.* 1929). But this remedy of exoneration is not without its qualifications. It can in no way hinder or prejudice the rights of the creditor. As was said in *Greenberg v. Leff, supra,* 104 *N. J. Eq.* at *page* 504, "* * * relief of this nature [exoneration] should only be awarded with due regard to the interest of the creditor; the creditor should not be subjected to the danger of loss, or even unreasonable delay in collecting his debt." See also *Irick v. Black, supra,* 17 *N. J. Eq.* at *page* 195.

Applying the above principles to the present case, we are of the opinion that to make the trustee a party to this action for the purpose of delaying plaintiffs while defendants seek exoneration would be unreasonable and jeopardize the plaintiffs' chances for ultimate recovery and conflict with the contract of the parties. The quoted portion of the guarantee instrument clearly indicates that the parties intended that upon the obligations maturing it would furnish the plaintiffs with an immediate remedy against the defendants without first seeking to collect from the principal debtor or attempting to realize from securities or other assets. The proposed third-party complaint would inject into the trial issues wholly unrelated to the controversy between plaintiffs and defendants, issues which are material only to the defendants' claim against the trustee, *e. g.,* whether or not the trustee can be compelled to exonerate the defendants in the light of the bankruptcy court's ruling that he is not liable on that claim. It is apparent that the resolution of these issues and any appeals which may arise therefrom will

significantly retard the plaintiffs' recovery. Moreover, even if a final determination in the state court is in favor of the defendants against the trustee, the defendants cannot compel the trustee to satisfy the plaintiffs' claim without the prior approval of the bankruptcy court. The order of that court authorizing the defendants to join the trustee expressly reserves this power. Whether the bankruptcy court will permit these funds to leave the estate will possibly entail further litigation. The plaintiffs' payment, if they are entitled to such, should not be delayed while the rights of the defendants and trustee are being relitigated in the federal courts.

The conduct of a law suit unavoidably subjects the litigants to some delay. It is equally true that the introduction of a third party will somewhat extend this delay. In the ordinary case in which a surety is seeking to join his principal as a third-party defendant for the purpose of exoneration and the creditor is not otherwise prejudiced, the delay normally incident to the fair processing of the suit should not work to defeat the joinder. See *Binns v. Baumgartner*, 105 *N. J. Eq.* 58 (*Ch.* 1929). However, in the present case the delay which will be engendered by joining the trustee as a third-party defendant to the proposed third-party complaint will be far greater than what may be considered normal. In addition, the extent of the delay will be largely determined by circumstances wholly beyond the control of the trial court. Furthermore, plaintiffs' claim against the trustee is still in litigation in the federal court. We were informed at the oral argument that the matter is soon to be argued before the United States Court of Appeals. There is a possibility that the plaintiffs will receive an adverse determination in that court. There is also the possibility that under the proposed third-party action the trustee might be successful in the state courts. Meanwhile, if the defendants' financial position, which is admittedly not strong, should worsen, the plaintiffs may find themselves in the position of being unable to obtain satisfaction from either source. Plaintiffs should not be subjected to any

such risk. At the oral argument in this court it was suggested that this risk could be obviated if the defendants would give a surety bond or post cash to secure the payment of any judgment which may be obtained by the plaintiffs. The plaintiffs agreed, but counsel for the defendants informed us that they could not furnish such bond or cash.

The defendants contend in their brief that "In the instant case, the ample security retained by the Trustee in Bankruptcy is as safe in the control of the Bankruptcy Court as gold in Fort Knox." It is true that when a creditor is fully indemnified, and is subjected to no risk of loss, he may be compelled to resort first to the property of the principal in satisfaction of his claim. See *Irick v. Black, supra.* However, this is not a case in which the creditor has within his immediate reach any security of the primary debtor which he can apply to the debt. The security here is in the possession of the trustee, and the plaintiffs have not been successful so far in obtaining a determination by the federal courts setting it aside for them. To make the plaintiffs await a determination as to whether the trustee can be made to pay this obligation would be an unwarranted distortion of the defendants' unconditional guarantee of payment.

We are not faced with a situation in which the trustee is seeking to intervene to have the rights of all the parties determined in one action. The separateness of plaintiffs' claim against the defendants was expressly recognized by the United States Court of Appeals, where, in dissolving the restraint against this action, Judge Goodrich writing for that court stated that the bankruptcy court "* * * has full control over all the assets of the bankrupt. That control is unaffected by whatever goes on outside the bankruptcy court in litigation between one of the bankrupt's creditors and a party who has independent liability on one of the bankrupt's contracts." *In re Magnus Harmonica Corporation,* 237 *F. 2d* at *page* 869. Added weight must be given the above statement when it is considered that that case was argued and decided over two months after

the referee had authorized an application to have the trustee made a party to the present action.

In the light of the delay to which the plaintiffs will be subjected in prosecuting their claim to judgment, and their risk of being unable to receive satisfaction in the event a judgment is obtained, we agree with the Appellate Division that in this case the trial court's denial of defendants' motion seeking to join the bankrupt corporation and its trustee in bankruptcy for the purpose of exoneration and in seeking to stay the plaintiffs' action involved no abuse of discretion.

However, this affirmance will be deemed to be without prejudice to the defendants' right to apply to the trial court to file a new or amended third-party complaint against the bankrupt and its trustee. This upon the condition that the plaintiffs' right to proceed with their action shall in no way be impeded. To this end, under the circumstances of this case there should be a severance of the plaintiffs' action from any third-party proceedings. The trial court may in its discretion permit the third-party defendants to join defendants in their defense of plaintiffs' action, but on condition that there be no delay of plaintiffs' case.

The judgment is affirmed.

*For affirmance*—Chief Justice WEINTRAUB, and Justices HEHER, BURLING, JACOBS, FRANCIS and PROCTOR—6.

*For reversal*—None.