62 N.J. Super. 323 (1960)
162 A.2d 883
SAMUEL S. SALITAN, ET AL., PLAINTIFFS-APPELLANTS,
v.
FINN H. MAGNUS AND ELSIE A. MAGNUS, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued May 9, 1960.
Decided June 30, 1960.
*327 Before Judges GOLDMANN, FREUND and HANEMAN.
*328 Mr. Harry A. Margolis argued the cause for plaintiffs-appellants (Mr. Max L. Rosenstein, attorney).
Mr. Israel B. Greene argued the cause for defendants-respondents (Messrs. Greene and Robert S. Banks, on the brief).
The opinion of the court was delivered by FREUND, J.A.D.
This is a suit by a creditor of a bankrupt corporation against two persons who had undertaken to guarantee the bankrupt's debt to the creditor. They are sued on their individual contract of guaranty. The two individuals sued are the president and secretary, as well as the principal shareholders, of the bankrupt corporation. The Law Division granted defendants' motion for summary judgment after it was determined in a letter opinion that "plaintiffs' claim here is barred by force and effect of res judicata" and that in any case "the defendants are not * * * indebted to plaintiffs under the said agreement [of guaranty]." Plaintiffs appeal.
Plaintiffs, a limited partnership, are factors doing business as Credit Industrial Company. On February 27, 1953 plaintiffs entered into a contract with the Magnus Harmonica Corporation whereby plaintiffs agreed to lend the corporation moneys to be secured by an assignment to them of the corporation's accounts receivable. Other moneys were loaned to the corporation secured by chattel mortgages on the corporate property. In order to induce the creditor to enter this transaction, defendants Finn H. Magnus and Elsie A. Magnus executed a "direct and unconditional" guaranty by which they made themselves liable for "the due payment of all * * * obligations which [the corporation] may at any time owe to [plaintiffs], however created." The agreement recited that the guaranty "may be enforced without requiring [plaintiffs] first to resort to any other right, remedy or security * * *."
*329 The corporation filed a voluntary petition for reorganization under Chapter X of the Bankruptcy Act, 11 U.S.C.A. §§ 501-676 (1946), on December 15, 1955. On June 25, 1956 the Federal District Court for the District of New Jersey entered an order adjudging the debtor bankrupt and directing that bankruptcy proceedings be undertaken. During the period in which the corporation was attempting to reorganize, the accounts receivable were being collected by its trustee in reorganization and part of the moneys was turned over to the plaintiffs. On January 2, 1956 plaintiffs commenced this action against the defendants individually in the Superior Court, Law Division. Defendants secured an order from the United States District Court restraining the further prosecution of this suit until the further order of that court. Plaintiffs appealed to the United States Court of Appeals for the Third Circuit to vacate the restraint on the state court suit. Pending the disposition of the appeal, the Circuit Court of Appeals granted plaintiffs' motion for a stay of the District Court injunction. In re Magnus Harmonica Corp., 233 F.2d 803 (1956). On the main appeal, the Court of Appeals noted that a federal court, under 28 U.S.C.A. § 2283 (1952), may enjoin proceedings in a state court only in limited instances, one of them being "where necessary in aid of its jurisdiction." 237 F.2d 867, 868 (1956). The court held that the jurisdiction of the bankruptcy court, which had full control over the assets of the bankrupt, was unaffected by what went on outside the bankruptcy court in litigation between one of the bankrupt's creditors and a party independently liable on one of its contracts. 237 F.2d, at page 869. The instant suit was thus permitted to proceed.
Defendants then moved in the Law Division for leave to make the trustee a third-party defendant so as to claim a right of exoneration in the event they were individually compelled as guarantors to pay plaintiffs' claims. Plaintiffs opposed on the ground that such proceedings would delay their suit and inject into the case issues not before the *330 court. The Law Division denied defendants' motion. This court affirmed. 48 N.J. Super. 168 (App. Div. 1957). The Supreme Court granted defendants' petition for certification, 26 N.J. 303 (1958), and subsequently affirmed. 28 N.J. 20 (1958). The Supreme Court affirmed, however, without prejudice to defendants' right to file a third-party complaint against the trustee, on condition that the two actions would be severed and that there be no delay of plaintiffs' case. 28 N.J., at page 30. At the pretrial conference, the Law Division directed a severance of the two actions.
In the meantime, proceedings were taking place before the referee in bankruptcy in the United States District Court. The plaintiffs, as creditors, were parties to these proceedings; the defendants, as individuals, were not. The assets of the bankrupt corporation were sold at public auction. By reason of the sale of assets and the collection of the accounts receivable, the trustee in bankruptcy obtained sufficient funds to pay the balances due to the plaintiffs in full. It appears that, by virtue of plaintiffs' participation in the bankruptcy proceeding, they either have been fully paid the amount of all claims which they had against the corporation when the reorganization petition was filed in 1955 and which they asserted against the guarantors in the original 1956 complaint, or those claims are no longer in issue. The narrow issue that remains, however, is the matter of interest that would have accrued on plaintiffs' claims but for the filing of the reorganization petition. Plaintiffs asserted in the bankruptcy court that they were entitled to interest from the date of the petition to the date the trustee actually paid their claims. Three federal tribunals have ruled against them on that contention. See 159 F. Supp. 778 (D.C.N.J. 1958), and 262 F.2d 515 (3 Cir. 1959), both affirming the decision of the referee in this respect. It is this post-petition interest, in the amount of $23,678.38, that plaintiffs seek to recover from the defendants individually under their direct and unconditional guaranty. As noted above, the Law *331 Division judge determined that the claim is not a debt under the guaranty and is barred by res judicata.
On this appeal plaintiffs argue essentially that res judicata cannot apply because defendants were not parties or privies to the bankruptcy proceedings and subsequent federal litigation, and that post-petition interest was not allowed in those proceedings only as against the trustee in bankruptcy acting for the general creditors and not as against the trustee acting for the bankrupt corporation or its independent guarantors. Plaintiffs urge that it is most extraordinary for a creditor to be denied interest on a claim against a guarantor by reason of the voluntary and uncontrollable act of the debtor in instituting bankruptcy proceedings, when the whole purpose of the guaranty was to secure the creditor against that very event. The Magnuses agree that res judicata in its technical signification does not apply, but contend that reason and justice and the doctrine of collateral estoppel must result in a ruling that plaintiffs are precluded from relitigating a matter already decided against them. They say that they are in effect sureties for the corporation and that an adjudication on the merits in an action between the creditor and the principal debtor is conclusive in favor of the surety in the creditor's subsequent action against him. Plaintiffs' reply brief argues that the principal debtor and the trustee in bankruptcy were completely different parties and that a judgment in favor of the latter acting for the creditors and not for the bankrupt-debtor does not have a conclusive effect in favor of the debtor or its surety.
Before considering the effect of the federal litigation on the matter in controversy, a number of related points should be disposed of. The discharge of a bankrupt does not ordinarily alter the liability of its guarantor or surety. Bankruptcy Act, § 16, 11 U.S.C.A. § 34. The surety may, however, pay the creditor, become subrogated to his rights, and file a claim in the creditor's name against the bankrupt. Sec. 57, sub. i, 11 U.S.C.A. § 93, sub. i. A discharge is personal to the debtor and does not inure to *332 the surety's benefit; hence the guarantor of the original obligation remains liable thereupon notwithstanding the debtor's discharge in bankruptcy. 8 C.J.S., Bankruptcy, § 581(b) (1), pp. 1548-1549 (1938). The foregoing rules pertain to a discharge, and are not authority for automatically holding the guarantor liable on the original obligation where it has been determined that the bankrupt has fully satisfied that obligation or that it does not exist. It might be contrary to the spirit and purpose of the guaranty to deprive the guarantor of defenses and equities which the bankrupt could have availed himself of in the creditor's suit against him. Id., at p. 1548. In this regard we note parenthetically that, just as the bankruptcy court is one with equity powers, so also are the Law and Appellate Divisions of the Superior Court empowered to grant equitable relief. N.J. Const. 1947, Art. VI, § 4, par. 4; § 5, par. 3.
The sharp distinction which plaintiffs seek to draw between the trustee in bankruptcy and the principal debtor who is the bankrupt is misleading. The trustee in bankruptcy is an officer of the court, charged with the duties and responsibilities of liquidation, distribution and administration of the bankrupt's estate, and he stands in a fiduciary relation to all creditors. In re Deena Woolen Mills, Inc., 114 F. Supp. 260, 267 (D.C.S.D. Me. 1953). For some purposes he stands in the position of the creditors while for others he stands in the position of the bankrupt itself. In re Hedgeside Distillery Corp., 123 F. Supp. 933, 949 (D.C.N.D. Cal. 1952); 8 C.J.S., Bankruptcy, § 155, p. 606 (1938); 2 Remington, Bankruptcy (Rev. ed. 1956), § 1117, p. 584.
Consideration must also be given the creditor's right to interest on the original obligation pending the delay in payment that necessarily occurs once the petition in bankruptcy has been filed. It is a general rule of bankruptcy law that interest on the bankrupt's debts stops, for the purpose of liquidation of an insolvent estate, at the date of the filing of the bankruptcy petition. Bankruptcy Act, *333 § 63, sub. a(1) and (5), 11 U.S.C.A. § 103, sub. a(1) and (5). See 6 Am. Jur. (Rev. ed. 1950), Bankruptcy, § 493. One reason for the suspension of interest as of the date of bankruptcy is that the bankrupt should not be compelled to pay a penalty for delay occasioned by action of law. It has been said that this reason has no validity where the bankruptcy is voluntarily. See discussion in Annotation 27 A.L.R.2d 586 (1953). Another reason for the stopping of interest is not that the claims lose their interest-bearing character but that an inequality to certain creditors would result if the debts carried different rates of interest. Littleton v. Kincaid, 179 F.2d 848, 852, 27 A.L.R.2d 572, 578 (4 Cir. 1950). Hence the general rule would seem to have been designed primarily as a protection to those creditors whose claims bear lower rates of interest rather than as a charity to the bankrupt. This is seen most clearly where, as rarely occurs, the bankrupt would profit by a turning back of surplus assets to him, in which case an exception to the general rule is commonly recognized and interest is held recoverable for the delay in payment occurring after the filing of the petition; the bankrupt's recovery of surplus is, of course, reduced pro tanto. See 2 Remington, op. cit., supra, §§ 726, 916.
Another exception to the general rule that interest stops while the bankrupt's assets are in custodia legis is where, as in the instant case, a creditor's security on a secured debt is worth more than the sum of principal and interest due. Interest accruing after the date of bankruptcy may be permitted on such amply secured claims. Vanston Bondholders Protective Committee v. Green, 329 U.S. 156, 164, 67 S.Ct. 237, 240, 91 L.Ed. 162, 167 (1946), rehearing denied 329 U.S. 833, 67 S.Ct. 497, 91 L.Ed. 706 (1947).
We turn to a point the parties have briefed exhaustively and upon which a measure of agreement has seemingly developed. Although defendants' liability on the contract of guaranty is direct and unconditional in the sense that it was enforceable by plaintiffs without the necessity *334 of first obtaining judgment against the corporation, their obligation thereunder is not independent. Defendants guaranteed the payment of only such debts as the corporation might at any time "owe" to plaintiffs. There can be no doubt that, in the circumstances of this case, the existence of a subsisting corporate debt to plaintiffs is essential to a suit on the guaranty. See 4 Williston, Contracts (Rev. ed. 1936), § 1213. In this sense the liability of the Magnuses is derivative and dependent. Moreover, notwithstanding that they were not parties to or bound by the bankruptcy proceedings, they would not, as sureties, be precluded from setting up the bankruptcy judgment as a bar against this suit if that judgment in fact relieved the principal debtor, and not only its trustee, of any duty to the creditor. Mutuality of estoppel is not essential where the party sought to be held bound by the prior judgment had been given an adequate opportunity to be heard in the previous action and where, as here, the liability of the defendant is altogether dependent upon the liability of the party exonerated in the previous action. This is an exception to the principle that the estoppel of a judgment must be mutual. Canin v. Kesse, 20 N.J. Misc. 371, 374, 28 A.2d 68 (D. Ct. 1942); Templeton v. Scudder, 16 N.J. Super. 576, 583-584 (App. Div. 1951). Cf. Hudson Transit Corp. v. Antonucci, 137 N.J.L. 704 (E. & A. 1948); Bango v. Ward, 12 N.J. 415, 420 (1953). While a judgment in favor of the creditor against the principal debtor is generally not conclusive against the surety, De Greiff v. Wilson, 30 N.J. Eq. 435, 437 (Ch. 1879); Restatement, Security, § 139(2); 4 Williston, op. cit., supra, § 1256; Monmouth Lumber Co. v. Indemnity Ins. Co., 21 N.J. 439, 446, 447 (1956), a judgment that the creditor, because of his conduct, cannot recover from the principal debtor is ordinarily conclusive in favor of the surety in the creditor's suit against him. This is so because if the surety were liable to the creditor, he would necessarily be allowed reimbursement from the principal, and the principal's own meritorious defense would thus be defeated *335 by indirection, a result that the law cannot tolerate. (Results may differ where the creditor was unable to recover from the principal because of some reason for which the creditor was not to blame, as, for example, the principal's discharge in bankruptcy or his infancy. See 4 Williston, op. cit., supra, at page 3596.)
The critical question therefore is the effect of the previous judgment on the bankrupt corporation. The inquiry requires an understanding of precisely what has occurred in the federal courts. In his certificate of review to the United States District Court, the referee in bankruptcy made findings of fact and conclusions of law. He found that the Credit Industrial Company, almost since the execution of the factoring agreement, had used methods of calculating clearance charges and interest that resulted in an overcharge to the Magnus Harmonica Corporation to the extent of $3,746.08 and $26,046.22, respectively. Although the corporation had been furnished monthly statements of the transactions from February 1953 to December 1955, it at no time complained about the systems followed by plaintiffs. The referee concluded that the trustee cannot rectify mistakes of the bankrupt and that, since the latter had not questioned the overcharges, the trustee would not be permitted to do so. He therefore ruled that the bankrupt would be required to pay the creditor the amounts shown to be due to it on the bankrupt's books as of the date of the filing of the petition, even though the books reflected the overcharges. The referee went on to rule, however, that the matter of post-petition interest "seems to qualify for a balancing of equities." Since the "factor was too enthusiastic in construing the contract in its favor and * * * the balance due it under the factoring agreement * * * has been swollen," he held that "it would be inequitable" to allow post-petition interest.
Plaintiffs appealed to the United States District Court. In an opinion affirming the decision of the referee, the court said:
*336 "[T]his court has a right to balance equities in this matter. The question is not purely legal and divorced from equitable considerations. The Bankruptcy Court is a court of equity * * *. The Referee * * * found Credit Industrial's position wanting in equity." (159 F. Supp., at page 781)
In the course of its opinion, the court expressed the view that even as to amply-secured claims, post-petition interest is not awarded as a matter of right but only allowable in such manner as will amount to a balancing of equities between creditors and debtors. 159 F. Supp., at pages 780-781.
Plaintiffs appealed to the Third Circuit Court of Appeals. It affirmed, the court finding:
"In this particular case equitable considerations do not favor giving the claimed payment to this secured creditor * * *. Such equities as are apparent favor the trustee acting for the general creditors as against Credit." (262 F.2d 515, 518) (Emphasis added)
Plaintiffs rely on the phrase we have italicized as support for their position that the denial of post-petition interest was not intended to benefit the bankrupt. They say that the federal courts were applying "a rule peculiar to bankruptcy proceedings and one which could only be taken advantage of by the corporation's trustee."
We are persuaded otherwise. Plaintiffs had the burden of demonstrating clearly that, in spite of these three adverse rulings, it was intended that they were to have a right to interest yet remaining from the bankrupt. In our opinion, this has not been shown. The order of the referee that was twice affirmed recites only that "interest on any balances due after December 15, 1955, is denied"; and there is no qualification that such result would obtain only in favor of the trustee acting for the general creditors or that plaintiffs would be entitled to interest from the bankrupt if a surplus eventuated. The opinions of the federal tribunals, read in their entirety, regard as determinative the inequity of plaintiffs' conduct and not the capacity in which the trustee defended against the claim. The referee did not *337 decide, as plaintiffs contend, that interest was "due" from the corporation; the only sum which he found to be "due" from the corporation was "the amounts shown to be due" to the plaintiffs on the bankrupt's books "as of the date of the filing of the petition." We think it is highly unlikely that the federal courts intended that plaintiffs, unable to collect from the trustee, would be permitted to visit the consequences of their own inequitable conduct on the defendants. The statement appearing in 237 F.2d, at p. 869, allegedly indicating awareness by the court of the possibility that the creditor will win the state court suit, was made at the inception of the litigation before plaintiffs' conduct in making the overcharges was made known to the court.
The foregoing indicates that we do not know and cannot say as a fact what the federal courts intended insofar as the bankrupt was concerned. As just discussed, what evidence is available preponderates in favor of the conclusion that the bankrupt, as well as the trustee acting for the creditors, was meant to prevail on plaintiffs' claim for interest. However that may be, the allowability of interest on claims against an estate in bankruptcy is a matter of federal law. The federal courts in this case have denied interest, and the judgment rendered relieves the bankrupt of that obligation. We do not conceive it to be our function as a state court to give that judgment a construction that will accord with what plaintiffs suggest was its intended effect, when the judgment, as possibly distinguished from the opinions that preceded it, on its face does not lend itself to such a construction.
Even if it were necessarily to be held that the federal courts denied interest because of a rule that was peculiarly assertable in bankruptcy proceedings, we would not be prepared to say that plaintiffs' case would be significantly enhanced. The present claim made against the guarantors did not exist before bankruptcy. Nor has it come into existence after bankruptcy, for the general rule *338 is that interest ceases to run as of the moment the petition is filed. We have seen that there is an exception to this rule as to creditors whose security exceeds the sum of principal and interest due. It is a federal question whether in such a case interest continues to run as a matter of right or whether the matter is discretionary with the bankruptcy court. We need not resolve that question. In the present case, the federal courts were guided by the decision of the United States Supreme Court in Vanston Bondholders Protective Committee v. Green, supra, which indicated that the exception is a flexible rule and that the allowance of interest in bankruptcy proceedings involves a balancing of equities. As a result, they exercised their equitable jurisdiction and denied interest. The basis for that denial is not relevant here. It follows that the claim for post-bankruptcy interest, here made against a third-party guarantor, has no foundation and is legally non-existent. And we will not, either as a court of law or in the exercise of our equitable jurisdiction, hypothesize the existence of such a claim and on that theory proceed to a holding that the post-petition interest, which the bankruptcy court might have awarded, was within the terms of the guaranty or in the contemplation of the parties thereto.
It not having been shown that the previous judgment did not conclude plaintiffs' claim for interest from the bankrupt, we hold that plaintiffs have proved no subsisting corporate liability to them and hence no right to recover under the guaranty. Our conclusion is not based on any rule of res judicata but on the rendition of judgment against plaintiffs as an operative fact in this case and on the interpretation thereof considering the nature of defendants' obligation under the guaranty. See Restatement, Judgments, § 111.
The judgment is affirmed.