**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2863-20

IN THE MATTER OF
A.V.B.,[1] an alleged
incapacitated person.

_____

Argued September 29, 2022 – Decided October 6, 2022

Before Judges Haas and Mitterhoff.

On appeal from the Superior Court of New Jersey, Chancery Division, Ocean County, Docket No. P-236987-20.

Stephen J. Pagano argued the cause for appellant V.B.D. (Riker Danzig Scherer Hyland & Perretti, LLP, attorneys; Stephen J. Pagano, of counsel and on the briefs; Lauren N. Spitser, on the briefs).

Jerry J. Dasti argued the cause for respondent A.V.B. (Dasti, Murphy, McGuckin, Ulaky, Koutsouris & Connors, attorneys; Jerry J. Dasti, of counsel and on the brief).

Kevin P. Kelly argued the cause for respondent W.B. (Kelly, Kelly & Marotta, LLC, attorneys; Kevin P. Kelly, on the brief).

---

[1]  We use initials and fictitious names to refer to the parties and other family members pursuant to Rule 1:38-3(e).

PER CURIAM

Appellant V.B.D. (Vera) appeals the trial court's April 29, 2021 order appointing her the guardian of the person of her mother, A.V.B. (Angie), and an independent attorney, Laura Halm, Esq., as the guardian of Angie's property. We affirm.

The parties are thoroughly familiar with the procedural history and facts of this case and, therefore, we summarize only the most salient details here. In 2015, Angie executed a power of attorney naming two of her children, Vera and W.B. (Wayne), as "co-attorneys in fact." Angie also obtained a living will naming another daughter, N.D. (Nancy), as her health care decision maker.

Two years later, Angie transferred property to Vera without her other children's[2] knowledge. When these children objected, Angie prepared a new last will and testament to address it.

In 2019, and again without the other children's knowledge, Angie executed a new power of attorney solely naming Vera as her agent. After learning of this development sometime in 2020, Wayne discovered that Vera planned to move Angie, who was then residing in an assisted living facility, to

---

[2] Angie had another son, S.D. (Sam).

A-2863-20

a home in New York that Vera had purchased using a $300,000 "bridge loan" she obtained from Angie.

On October 8, 2020, Wayne filed a verified complaint seeking the appointment of a conservator for Angie, who was now eighty-seven years old. Wayne alleged that Angie suffered from memory loss and that Vera was unduly influencing her to make financial transactions in Vera's favor. On October 29, 2020, Judge Therese A. Cunningham issued an Order to Show Cause (OTSC) temporarily restraining Vera from removing Angie from New Jersey and naming Jerry Dasti, Esq. as Angie's attorney. Vera filed an answer to Wayne's complaint, but did not raise any affirmative defenses.

Prior to the November 9, 2020 return date of the OTSC, Dasti filed an interim report with the court. Dasti expressed concern about the $300,000 Wayne alleged was missing from Angie's accounts. He also stated that Vera had titled the New York home in both her and Angie's names as joint tenants, rather than as tenants in common. Dasti also reported that after interviewing Angie, he was convinced she "might need not only a conservator, but also . . . [a] temporary and permanent guardian[]."

On November 9, 2020, Judge Cunningham conferenced the case with the parties. By that time, Vera had agreed to an accounting of the financial

A-2863-20

transactions she had undertaken on Angie's behalf. The judge determined she needed to hear from Angie in person to determine whether she objected to a conservatorship. See N.J.S.A. 3B:13A-2 (stating that "if the [proposed] conservatee objects to the imposition of a conservatorship, a conservator shall not be appointed."). If Angie was not competent to take a position on a conservatorship, the judge noted that a guardianship proceeding would be the more appropriate manner of proceeding.

The judge continued the hearing the next day. Both Angie and her husband, W.P.B. (Wesley), testified. Angie was unable to recall what had occurred in the case over the past few days and could not articulate a clear preference as to who she wanted to represent her. Vera then agreed not to move Angie to New York and to repay the "bridge loan" and make Vera whole.

After observing Angie during her testimony, Judge Cunningham determined that Angie needed a guardian ad litem (GAL), who could arrange for the appropriate medical evaluations and file an independent report with the court. Vera's attorney suggested that the judge appoint Halm as the GAL. The judge agreed. Dasti continued to serve as Angie's attorney. On November 13, 2020, the judge issue a conforming order.

A-2863-20

Halm retained two physicians to examine Angie. Both opined that Angie was mentally incompetent, and could not manage her own affairs.

To address the court's concerns about proceeding with a conservatorship in the absence of Angie's consent, Wayne filed a motion to amend his complaint to request the appointment of a guardian for Angie. Vera objected to amending the complaint and asserted the conservatorship action should be dismissed. However, Vera's attorney conceded that the medical reports were "sufficient to find that [Angie was] legally incapacitated" and "that the [c]ourt has an obligation, now that the doctors' reports have been filed, to appoint a guardian."

On February 16, 2021, Judge Cunningham held oral argument on Wayne's motion to amend his complaint. Based upon the doctors' reports indicating that Angie needed a guardian, the judge determined the litigation should proceed along that course and granted the motion.

With the consent of the parties' attorneys, the judge appointed Halm to serve as Angie's temporary guardian. The parties also agreed to move Angie and Wesley to a new facility where they could receive a higher level of care. Finally, the judge urged the parties to "weigh in" prior to the next hearing on the question of who should serve as the permanent guardian of Angie's person and property. The judge issued a conforming order on February 17, 2021.

A-2863-20

Immediately thereafter, the parties began to confer with each other and Halm toward reaching an amicable resolution of the dispute. From billing records submitted by Vera's attorney, it appears these discussions began on February 18, 2021, when Vera conferred with her attorney about "various items of possible resolution." Further conferences were conducted to discuss Vera's role as Angie's guardian of the person. The billing records indicate that the parties then worked together on a proposed order that would name Vera the guardian of Angie's person and an independent professional to be selected in the discretion of the court as the guardian of Angie's property.

Halm memorialized these discussions in her April 1, 2021 report to the court. Halm stated she was in the process of examining Angie's financial holdings in order to prepare an accounting of her finances. Halm noted that Vera had returned the funds she had borrowed to Angie and Wesley's accounts. As to an appropriate resolution of the guardianship action, Halm stated:

> It is clear that [Angie] requires a guardian. I am happy to say that despite the conflict within the family, I believe that all counsel have settled the matter in that [Vera] will be appointed the Guardian of the Person and an Independent Party of the [c]ourt's choosing will be appointed the Guardian of the Property. There are special provisions that have been carved out that will be included in the proposed [o]rder. I am hopeful that this [o]rder will be submitted to the [c]ourt shortly.

6

On April 5, 2021, Dasti filed his attorney report with the court. He confirmed that Angie could not handle her own financial affairs and needed a guardian to assist her. Because of continuing rancor between Angie's children, Dasti opined "that a four-way guardianship would never work and [would] not be in the best interests of" Angie. Consistent with parties' agreement, Dasti recommended that the court appoint Vera as the guardian of Angie's person and select Halm as the permanent guardian of Angie's property.

On April 7, 2021, Wayne's attorney submitted the parties' proposed order to the court. Consistent with the agreement recited in Halm's report, the order stated that Vera should be named the guardian of Angie's person, and that the court should select the guardian of her property. Vera's attorney was copied on all of this correspondence. The parties agreed that in view of this agreement, no one needed to appear on the next hearing date. Vera's attorney's billing records confirm this arrangement.

On April 12, 2021, Judge Cunningham rendered her decision on Wayne's request for the appointment of a guardian for Angie. Based on the medical reports, the judge found there was "no dispute" as to Angie's lack of capacity. She also found the parties agreed a guardian needed to be appointed. As expressed in Halm's report, the parties had agreed that Vera should serve as the

7

guardian of Angie's person "based on her proximity to where [Angie was] presently residing . . . ."

With regard to Angie's property, the judge noted that Wayne favored the appointment of an independent accountant, while Dasti proposed that Halm continue in her guardianship role. The judge noted that the other parties, including Vera, had not taken a position on the question of who should fill this role. After conducting an "independent review of this matter," Judge Cunningham found that "based on . . . what she's been doing on behalf of [Angie] to date[,] . . . Halm is . . . appropriate to be appointed as independent guardian of [Angie's] property and to continue to do so on a permanent basis." The judge therefore executed the parties' "consent order" on April 20, 2021.[3]

The judge later filed a written amplification of her oral decision pursuant to Rule 2:5-1(b). The judge again confirmed that the parties asked that she conduct the final hearing pursuant to Rule 4:86-6(a) without oral testimony based upon the parties' proposed form of judgment. The judge also noted that she appointed Halm as the guardian of Angie's property because it was in Angie's "best interest to . . . [have] an independent professional guardian of her property" in light of "the discord within the family unit, and the financial

_____

[3] The judge filed an Amended Judgment of Incapacity on April 29, 2021.

exploitation concerns expressed throughout the litigation . . . ." This appeal followed.

Although Vera did not object to the entry of the parties' proposed order naming her and Halm as Angie's guardians, she now argues that the trial judge failed to consider Angie's previously executed powers of attorneys in naming Halm as one of the guardians. Vera also argues the judge should have dismissed the conservatorship action because Angie was unable to consent to it. We disagree.

We give great deference to a trial judge's findings and conclusions. Rova Farms Resort, Inc. v. Investors Ins. Co. of Am., 65 N.J. 474, 484 (1974). We do not "engage in an independent assessment of the evidence as if [we] were the court of first instance." State v. Locurto, 157 N.J. 463, 471 (1999). We will not disturb the trial court's findings "unless they are so clearly insupportable as to result in their denial of justice." Estate of Ostlund v. Ostlund, 391 N.J. Super. 390, 400 (App. Div. 2007). However, we review de novo the trial court's interpretation of the law. Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995).

In appointing a guardian, "the court should consider the recommendations of the court-appointed attorney and the wishes of the incapacitated person, if

expressed." In re Guardianship of Macak, 377 N.J. Super. 167, 176 (App. Div. 2005). "If there is a significant issue as to the appropriate choice of guardian, or as to the underlying issue of incapacity, the court may appoint a [GAL] to advise the court as to the person's best interests." Ibid. A court is not bound by agreements of the parties, and must independently consider the evidence in determining whether a person is incapacitated, who shall serve as guardian, and where the person shall live. Id. at 176-78 (reversing finding of incapacity where alleged incapacitated person entered into settlement declaring him incapacitated).

Applying these standards, we detect no reason to disturb any of Judge Cunningham's rulings in this matter. We affirm substantially for the reasons she expressed in her oral decisions supporting each of the orders she entered. We add the following comments.

Vera's arguments on appeal ignore the fact that she agreed with Wayne, Halm, and Dasti that Angie was incapacitated and needed a guardian to manage her affairs. Vera's attorney suggested Halm's appointment as Angie's GAL, and later raised no objection to Halm's continuing her role as the temporary guardian. As reflected in the parties' proposed order, everyone agreed that Vera could serve as the guardian of Angie's person, but an independent professional needed

A-2863-20

to be appointed as the guardian of Angie's property. Vera did not challenge Halm's representation to the court that the parties had agreed that Vera would not serve as the guardian of Angie's property. She also did not question Dasti's recommendation that Halm be named to this position. Under these circumstances, Vera is judicially estopped from challenging Halm's appointment on appeal. See Kimball Intern, Inc. v. Northfield Metal Products, 334 N.J. Super. 596, 606 (App. Div. 2000) (a party is generally barred by the doctrine of judicial estopped from "advocat[ing] a position contrary to a position it successfully asserted in the same or a prior proceeding").

Vera does not seriously dispute that the parties settled the question of who should serve in the guardianship roles, but argues in her reply brief that the settlement agreement was never reduced to writing. However, a settlement agreement need not be in writing to be enforceable. Pascarella v. Bruck, 190 N.J. Super. 118, 125 (App. Div. 1983). Again, the record clearly reflects that the parties agreed that Vera and an independent professional should share the guardianship duties.

Contrary to Vera's contention, Judge Cunningham did not solely rely upon the parties' agreement in appointing the guardians. The judge independently

considered the evidence, and made detailed findings concerning why Vera and Halm were selected. We detect no basis for second-guessing that decision.

The fact that Wayne commenced this action by seeking a conservatorship rather than a guardianship for Angie does not change this result. Once Judge Cunningham determined that Angie was not capable of consenting or objecting to the conservatorship, Wayne filed a motion to amend his complaint to request the appointment of a guardian for Angie.

Although, as a general matter, leave to amend a pleading is freely granted in the interests of justice, see Rule 4:9-1, the "determination of a motion to amend a pleading is generally left to the sound discretion of the trial court . . . and its exercise of discretion will not be disturbed on appeal, unless it constitutes a 'clear abuse of discretion.'" Franklin Med. Assocs. v. Newark Pub. Sch., 362 N.J. Super. 494, 506 (App. Div. 2003) (quoting Salitan v. Magnus, 28 N.J. 20, 26 (1958)). The trial court's exercise of discretion requires a two-step analysis: "whether the non-moving party will be prejudiced, and whether granting the amendment would nonetheless be futile." Notte v. Merchs. Mut. Ins. Co., 185 N.J. 490, 501 (2006).

After the medical doctors provided their reports, all the parties recognized Angie needed a guardian. Therefore, Judge Cunningham properly exercised her

discretion in granting Wayne's motion to amend his complaint to seek that protection for Angie.

Finally, there is no evidence in the record to support Vera's claim that the judge failed to consider Angie's prior grant of a power of attorney to Vera. Indeed, Vera's questionable use of that power of attorney to obtain a $300,000 bridge loan from Angie led to the family discord that caused the parties to recommend, and the judge to order, the appointment of an independent professional to handle Angie's finances moving forward.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2863-20