ALLEGHENY INTERNATIONAL CREDIT CORPORATION *vs.*
BIO-ENERGY OF LINCOLN, INC., & another.[1]

Norfolk.   October 11, 1985. — November 29, 1985.

Present: DREBEN, KAPLAN, & WARNER, JJ.

*Bankruptcy*, Stay of other proceedings. *Guaranty*. *Usury*. *Contract*, Loan,
Lease. *Practice, Civil*, Summary judgment, Partial judgment.

In an action arising out of the breach of an agreement for the sale and
lease-back of a piece of construction equipment, the motion judge cor-
rectly refused to stay the proceedings under the automatic stay provisions
of 11 U.S.C. § 362 (a) (1982) where the claim for a stay was based on
assertions by the defense that the corporate defendant, a general partner
of a limited partnership, had entered the sale and lease-back agreement
on behalf of a limited partner, and that the limited partner, which had
filed a petition for relief under U.S.C. Title 11, might be required to
indemnify the corporate defendant. [157-158]
In an action by the assignee of the buyer of a piece of construction equipment
against the corporate seller and its president, who had guaranteed the
corporation's performance under a sale and lease-back agreement, seek-
ing recovery of rental payments, late charges, and expenses arising out
of the breach of the agreement, the defendants failed, in their opposition
to the plaintiff's motion for summary judgment, to raise any material
issue of fact as to the validity of the assignment. [158-159]
In an action by the assignee of the buyer of a piece of construction equipment
against the corporate seller and its president seeking rental payments,
late charges, and expenses arising out of the breach of an agreement for
the sale and lease-back of the equipment, documents and affidavits
submitted by the defendants in opposition to the plaintiff's motion for
summary judgment raised issues of material fact as to whether the trans-
action was a loan, rather than a lease, and thus violated the usury
provisions of G. L. c. 271, § 49, and, if it were a loan, as to the amount
lent. [159-162]
In an action by the assignee of the buyer of a piece of construction equipment
against the corporate seller and its president seeking rental payments,
late charges, and expenses arising out of the breach of an agreement for
the sale and lease-back of the equipment, genuine issues of fact raised

---

[1] Fred M. Dellorfano, Jr.

by the defendants' affidavits both as to whether the transaction was in reality a loan rather than a lease, and thus violated the usury provisions of G. L. c. 271, § 49, and, if it were a loan, as to the amount lent, did not preclude the entry of a partial summary judgment for the plaintiff, where a balancing of the relevant factors made it inequitable to allow the defendants, who had received a substantial sum of money, to further defer the payment of amounts unquestionably due or to receive a windfall. [163]

In an action by the assignee of the buyer of a piece of construction equipment against the corporate seller and its president arising out of the breach of an agreement for the sale and lease-back of the equipment, there was no merit to the defendants' claims that the fact that a mechanic's lien may have been placed on the equipment made the lienholder a necessary party; that it was improper under Mass.R.Civ.P. 54 (b) for a judge to determine, notwithstanding the pendency of a third-party complaint by the defendants against the corporate defendant's limited partners, that there was no just reason for delay; and that the legal fees awarded the plaintiff were unreasonable. [164]


CIVIL ACTION commenced in the Superior Court Department on September 24, 1982.

A motion for summary judgment was heard by *Paul K. Connolly*, J., and *Herbert F. Travers, Jr.*, J.

*Christine J. Benway* for the defendants.

*Marvin R. Finn* for the plaintiff.

DREBEN, J.   At the end of January, 1982, Bio-Energy of Lincoln, Inc. (Bio), and another[2] sold a piece of earthmoving equipment for $75,000. At the same time, Bio entered into a three-year "lease" with the buyer which required Bio to pay a monthly rental fee. Bio paid the rent for one month but failed to make the remaining payments. The plaintiff, Allegheny International Credit Corporation (Allegheny), the assignee of the buyer, brought this action against Bio and its president, Fred M. Dellorfano, Jr., who had guaranteed Bio's performance under the lease. The defendants in their answer complained against two third-party defendants.[3]

---

[2] The bill of sale designated "Fred M. Dellorfano, Jr. of Bio-Energy of Fort Fairfield Association, and Bio-Energy of Lincoln, Inc." as "Seller."

[3] The third-party defendants are not involved in this appeal.

After some discovery, Allegheny filed a motion for summary judgment seeking the rental payments which, under the lease, could be accelerated upon default, and also seeking late charges and expenses. A judge of the Superior Court ordered summary judgment for Allegheny "in the sum of $99,876.88 under the lease agreement." The judge also ordered the case to be placed on a hearing list for the determination of reasonable attorney's fees and late charges. The amounts of such fees and charges were decided by another judge who, under Mass.R.Civ.P. 54(b), 365 Mass. 821 (1974), also determined, notwithstanding the pendency of the third-party complaint, that there was no just reason for delay and directed the entry of judgment. Judgment entered on December 11, 1984.

The defendants in their appeal raise numerous objections. We affirm the judgment insofar as it awarded the plaintiff $99,876.88 and remand for further proceedings to determine whether any additional amounts are due.

1. *Stay Under the Bankruptcy Code.* The defendants claim that the action should have been automatically stayed under 11 U.S.C. § 362(a) (1982).[4] This argument is based on their assertions that Bio, a general partner of a limited partnership, entered the sale and lease-back provisions on behalf of a corporation which is a limited partner of Bio and that the limited partner, which had filed a petition for relief under U.S.C. Title 11, may be required to indemnify Bio. The defendants, by a third-party complaint, have made the limited partner a third-party defendant in this action.

---

[4] 11 U.S.C. § 362(a) (1982) provides in part:

"Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title . . . operates as a stay, applicable to all entities, of —

"(1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;

"(2) the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title; . . . ."

The automatic stay provisions of the Bankruptcy Code apply only to a "proceeding against the [petitioning] debtor," see note 4, *supra*, and not against others. Thus the stay provisions have been held not to apply to proceedings against a codefendant of the debtor, see *Pitts* v. *Unarco Indus., Inc.*, 698 F.2d 313, 314-315 (7th Cir.), cert. denied sub nom. *Pitts* v. *GAF Corp.*, 464 U.S. 1003 (1983); *Austin* v. *Unarco Indus., Inc.*, 705 F.2d 1, 4-5 (1st Cir.), cert. dismissed, 463 U.S. 1247 (1983); *Royal Truck & Trailer, Inc.* v. *Armadora Maritima Salvadorena, S.A., de C.V.*, 10 Bankr. 488, 490-493 (N.D. Ill. 1981), against individual partners of the debtor, see *In re Aboussie Bros. Constr. Co.*, 8 Bankr. 302, 303-304 (E.D. Mo. 1981); *In re Bank Center, Ltd.*, 15 Bankr. 64, 65 (W.D. Pa. 1981), or against the guarantors of its debts, see *In re Larmar Estates, Inc.*, 5 Bankr. 328, 330 (E.D. N.Y. 1980). See generally 2 Collier, Bankruptcy § 362.04 (15th ed. 1985).

The case relied upon by the defendants, *Seybolt* v. *Bio-Energy of Lincoln, Inc.*, 38 Bankr. 123 (D. Mass. 1984), is to be distinguished. In that case the creditor was an "insider" and alleged to have been actively involved in the day to day business operations of the petitioning debtor. *Id.* at 124. Also, it seems that the stay in that case was not based on the automatic stay provisions of the Bankruptcy Code but rather on a determination by the court that, in the circumstances, the stay should be granted.

Bio is not in the Bankruptcy Court, and its obligations and those of its president, Dellorfano, to the plaintiff are independent of any claims either of them may have against Bio's alleged limited partner, the debtor in the Bankruptcy Court. The motion judge properly refused to stay the proceedings. Compare *Irving Levitt Co.* v. *Sudbury Management Associates*, 19 Mass. App. Ct. 12, 15 (1984).

2. *Assignment of guaranty.* Dellorfano argues that the assignment by the buyer of the lease and of his guaranty discharged his obligation. The lease document which Dellorfano subscribed as guarantor belies this claim. The lease contains spe-

cific language, quoted in the margin,[5] permitting assignment and setting forth the rights of the assignee. Nothing in the papers filed in opposition to the plaintiff's motion for summary judgment raises a material issue of fact as to the validity of the assignment. The vague claim in the defendants' brief that the guarantor's risk may have been materially increased is not supported by any specific facts in the record and is not even asserted in any affidavit.

That Dellorfano did not specifically assent to the assignment to Allegheny is of no consequence. Not only did he consent in advance to the assignment by reason of his signature on the face of the lease which contained the provision previously quoted, see *Merrimack Valley Natl. Bank* v. *Baird*, 372 Mass. 721, 725 (1977), but, in the absence of special circumstances, such consent is unnecessary. See *Healthco, Inc.* v. *Zambelis*, 2 Mass. App. Ct. 914 (1975); 3 Williston, Contracts § 412, at 34 (3d ed. 1960); 4 Corbin, Contracts § 868, at 469 (1951). No special circumstances have been raised by the record.

3. *Violation of usury laws.* The most troublesome claim made by the defendants is that the transaction is in reality a loan and is a violation of G. L. c. 271, § 49.[6] That statute, set forth in part in the margin,[7] requires that any person who

---

[5] "19. It is understood that Lessor contemplates assigning this lease, and that said assignee may assign the same. All rights of Lessor in the equipment and hereunder may be assigned, pledged, mortgaged, transferred, or otherwise disposed of, either in whole or in part, without notice to Lessee. The assignee's rights shall be free from all defenses, set-offs or counterclaims which Lessee may be entitled to assert against Lessor. No such assignee shall be obligated to perform any duty, convenant or condition required to be performed by Lessor under the terms of this lease."

[6] For purposes of reviewing the allowance of the motion for summary judgment, we assume, without deciding, that the transaction, if a loan, is governed by G. L. c. 271, § 49. Whether that is the case will be more appropriately determined on a more ample factual record.

[7] General Laws c. 271, § 49, amended by St. 1971, c. 368, provides in part:

"(*a*) Whoever in exchange for either a loan of money or other property knowingly contracts for, charges, takes or receives, directly or indirectly, interest and expenses the aggregate of which exceeds an amount greater than twenty per centum per annum upon the sum loaned or the equivalent

charges more than twenty percent a year as interest and expenses on a loan must notify the Attorney General. No such notification took place here, and it appears that the payments provided for in the lease exceed a twenty percent interest rate.[8]

The plaintiff argues that the lease is a true lease and therefore that the provisions of G. L. c. 271, § 49, are inapplicable. Whether a transaction is a lease or a loan is often a close question. See generally, White & Summers, Uniform Commercial Code § 22-3 (2d ed. 1980). See also G. L. c. 106, § 9-408, and Official Reasons for 1972 Adoption of that section. The

---

rate for a longer or shorter period, shall be guilty of criminal usury . . . . For the purposes of this section the amount to be paid upon any loan for interest or expenses shall include all sums paid or to be paid by or on behalf of the borrower for interest, brokerage, recording fees, commissions, services, extension of loan, forbearance to enforce payment, and all other sums charged against or paid or to be paid by the borrower for making or securing directly or indirectly the loan, and shall include all such sums when paid by or on behalf of or charged against the borrower for or on account of making or securing the loan, directly or indirectly, to or by any person, other than the lender, if such payment or charge was known to the lender at the time of making the loan, or might have been ascertained by reasonable inquiry.

"  .   .   .   .

"(c) Any loan at a rate of interest proscribed under the provisions of paragraph (a) may be declared void by the supreme judicial or superior court in equity upon petition by the person to whom the loan was made.

"(d) The provisions of paragraphs (a) to (c), inclusive, shall not apply to any person who notifies the attorney general of his intent to engage in a transaction or transactions which, but for the provisions of this paragraph, would be proscribed under the provisions of paragraph (a) . . . ."

[8] The lease required thirty-six monthly payments of $2,943. If the "loan" is considered to be for $75,000 (and a fortiori for any lesser amount), such payments would be at a rate higher than twenty percent if calculated under the Regulation Z Annual Percentage Rate Tables issued by the Board of Governors of the Federal Reserve System. We assume, but do not decide, that such tables provide an appropriate method of determining the interest rate under G. L. c. 271, § 49. See G. L. c. 140D, § 5, and 209 Code Mass. Regs. 32.22(b) (1) (1982), which authorize the use of such tables for computing finance charges which have to be disclosed in connection with consumer credit transactions. We note that the interest rate determined under such tables is virtually identical to that computed according to the monthly mortgage amortization schedule contained in Thorndike Encyclopedia of Banking and Financial Tables 5-210 (rev. ed. 1980).

determination cannot, we think, be settled on the bare record before us.

The documents and affidavits, construed in the light most favorable to the parties opposing summary judgment, i.e., the defendants, *Hub Associates* v. *Goode*, 357 Mass. 449, 451 (1970), and taken in the context of the broader negotiations of which this transaction is claimed to have been a part, do not satisfy the plaintiff's burden of showing that "there is no genuine issue of material fact" as to whether the lease was a true lease. *Community Natl. Bank* v. *Dawes*, 369 Mass. 550, 554 (1976).

Although, taken by itself, the lease does not appear to be a loan, an addendum of even date contains provisions which look in that direction. The addendum ties the payments to the prime rate at a Pittsburgh bank on the "[p]rincipal balance outstanding"[9] and also provides that the lessor will discontinue billing once the cost of the equipment to the lessor "is fully amortized."[10]

Moreover, it is clear from the affidavits of both parties that Bio at the time of entering the lease was actively trying to borrow money. The affidavit of Dellorfano[11] states that in Jan-

---

[9] The addendum provides in relevant part: "Notwithstanding any provision to the contrary, it is mutually agreed that the monthly payments due under the terms listed on Schedule A are based on a Prime Rate at Mellon Bank, N.A. (Pittsburgh, PA) of 15.75%.

"In the event that the Prime Rate as quoted by Mellon Bank, N.A., on the 30th day of the calendar month immediately preceding the month in which a rental payment is due [*sic*], an adjustment shall be made for any increase in the Prime Rate above 15.75% at the rate of $.21 per $1,000.00 of the *Principal balance outstanding* for each ¼% increase in Prime Rate. This adjustment shall be billed monthly and is payable upon receipt by Lessee. In the event that there is a decrease in the Prime Rate of 15.75% an adjustment shall be made for any decrease in Prime at the rate of $.21 per $1,000.00 for each ¼% decrease in Prime to a floor of 13%. This adjustment shall be credited to the last payment of the Lease until the Principal balance shall have been amortized to zero (0). Lessor agrees to discontinue billing once the cost of the Equipment to Lessor is fully amortized, and all charges pertaining to this Lease are paid in full." (Emphasis supplied.)

[10] The lease, however, provides for the return of the equipment at the end of the lease term.

[11] His deposition, although reproduced in the record appendix, is not properly before us as it was not submitted to the motion judge. On appeal, counsel conceded this point at oral argument.

uary, 1982, he began negotiations on behalf of Bio to obtain a loan from Allegheny of $1.7 million and that he entered into the sale and lease-back transaction as an interim financing mechanism.

Appended to an affidavit filed on behalf of Allegheny by one John Bartling is a contract dated January 25, 1982, under which, Bartling averred, Bio hired a consulting company to arrange for a $1.7 million loan to Bio. Bartling was the president of the consulting firm hired by Bio and was also president of the corporation which bought its equipment. The quest for much greater financing through Bartling's consulting firm at the same time Bartling, through another of his firms, was negotiating the sale and lease-back transaction lends substance to the defendants' claim that the leasing arrangement may have been a loan.[12]

The principal amount of the loan, if it is one, is also subject to some question. The sale price of the equipment which Bio leased back from the buyer was $75,000. Bio requested that $9,750 be paid to the consulting company of which Bartling was president and the remaining $65,250 to Bio.

The defendants claim that $9,750 should be viewed as part of the cost of the loan. The amount of the consulting firm's retainer as set forth in the consulting contract was $7,500. Since the defendants' affidavits do not contest the existence of that contract or question what it was for (services for a $1.7 million loan), a material question of fact is only raised as to whether the excess over $7,500, i.e. $2,250, was a charge relating to the "lease."

---

[12] For a discussion of some of the relevant considerations in determining whether a transaction is a lease or a loan, see White & Summers, *supra* at § 22-3. For example, the lease provides for the return of the equipment at the end of the lease term. If, despite the clause in the addendum providing for the cessation of payments upon amortization, the return was really expected, as might be the case if the original lessor or the assignee has facilities to store the goods or rents similar equipment, and if the lessee's payments are found to be in the nature of true rent (a sum for wear and tear plus reasonable profit), then the transaction may, indeed, turn out to be a lease.

We thus conclude that the affidavits raise genuine issues of fact both as to whether the sale lease-back transaction was a loan, and if so, what amount was lent. These questions, however, do not preclude the entry of a partial summary judgment for the plaintiff. It is true that the total amount of the judgment entered by the lower court, i.e., $114,363.39, exceeds the twenty percent figure permitted by G. L. c. 271, § 49. It is also true that the statute, as construed in *Begelfer* v. *Najarian*, 381 Mass. 177, 189 n.16 (1980), requires that all fees and expenses be included in determining the interest rate being charged. Nevertheless, *Begelfer* at 187, citing 14 Williston, Contracts § 1630A, at 26 (3d ed. 1972), also indictates that "[u]nless no other conclusion is possible from the words of a statute it should not be held to make agreements contravening it totally void."

We think that here, as in *Begelfer*, a balancing of the relevant factors[13] makes it inequitable to allow the defendants, who have received a substantial sum of money, to defer still longer the payment of amounts which unquestionably are due or to receive a windfall. It was thus proper, even if the transaction is ultimately found to be a loan, for the judge to enter judgment in the amount borrowed which remained unpaid at an interest rate not exceeding the maximum lawful rate. As the computations set forth in the margin indicate, the sum of $99,876.88 does not exceed that figure.[14]

4. *Remaining claims.* The remaining claims of the defendants are without merit.

---

[13] As set forth in *Begelfer*, 381 Mass. at 189, those factors include: "the importance of the public policy against usury, whether a refusal to enforce the term will further that policy, the gravity of the misconduct involved, the materiality of the provision to the rest of the contract, and the impact of the remedy on the parties' rights and duties."

[14] At a minimum Bio owed the plaintiff $71,019.50 of principal — $75,000 minus $2,250 and minus the principal repaid in the first payment, i.e., $1,730.50 (This figure of $1,730.50 was obtained by subtracting one twelfth of the annual maximum lawful interest [20%] payable on the sum of $72,750, i.e. $1,212.50, from the first payment of $2,943.) The principal sum of $71,019.50 together with simple interest theron at 20% from April 10, 1982 (the date the second payment was due), to the date of the judgment, December 11, 1984, would result in a figure in excess of $99,876.88.

(a) The fact that a mechanic's lien may have been placed on the earthmoving equipment does not, as the defendants assert, make the lienholder a necessary party. No challenge is here made to the lien, and this action does not preclude the lienholder from asserting whatever rights he may have.

(b) As indicated earlier, the defendants filed third-party actions against the limited partners of Bio. They urge that it was improper under Mass.R.Civ.P. 54(b) to determine that there is no just reason for delay. There is here no abuse of discretion (1) where the plaintiff had a clear right to payment of at least $99,876.88; (2) where the liability, if any, of the third-party defendants is independent of the obligations of the defendants; and (3) where an uncontroverted affidavit filed on behalf of the plaintiff indicates the precarious financial position of the defendants. See *Curtiss-Wright Corp.* v. *General Elec. Co.*, 446 U.S. 1, 12 (1980).

(c) The claim that the legal fees awarded were unreasonable is without basis. We see no abuse of discretion in the amount awarded. Whether the plaintiff will receive such sum will, however, depend on whether the transaction falls within the usury statute.

5. *Remedy.* The portion of the judgment entered December 11, 1984, which awards the plaintiff $99,876.88 is affirmed, and is considered certified under Mass.R.Civ.P. 54(b). No prejudgment interest is to be awarded, as such interest would be duplicative. See *Computer Syss. Engr., Inc.* v. *Qantel Corp.*, 740 F.2d 59, 71 (1st. Cir. 1984). The plaintiff is to have costs under Mass.R.A.P. 26, as amended, 378 Mass. 925 (1979).

Because of the genuine material issues whether the transaction was a loan governed by G. L. c. 271, § 49, and, if so, whether the $2,250 should be considered as part of the amount of such loan, the judgment is vacated insofar as it awards in excess of $99,876.88, and the matter is remanded for further proceedings consistent with this opinion. On remand, if the transaction is determined to be a loan to which G. L. c. 271, § 49, applies, interest (which for the purposes of the statute, inlcudes all fees and late charges) in excess of the maximum lawful rate may not be awarded. If, on remand, the transaction

is determined not to be a loan to which the statute is applicable, the entire original judgment entered December 11, 1984, is to stand.

*So ordered.*