RAYMOND INTERNATIONAL BUILDERS, INC., PLAINTIFF-AP-
PELLANT, v. FIRST INDEMNITY OF AMERICA INSURANCE
COMPANY, DEFENDANT AND THIRD-PARTY PLAINTIFF-
RESPONDENT, AND DESIGN & PROJECT ENGINEERS,
THIRD-PARTY DEFENDANT.

Argued September 9, 1986—Decided October 28, 1986.

*Barry J. Donohue* argued the cause for appellant (*Donohue, Donohue, Costenbader & Strasser,* attorneys).

*Gerald W. Conway* argued the cause for respondent (*Conway & Reiseman* and *John J. Rush,* attorneys; *Gerald W. Conway* and *John J. Rush,* of counsel; *Kenneth P. Westreich,* on the brief).

*Gary J. Lesneski* submitted a letter in lieu of brief on behalf of *amicus curiae,* The Waldinger Corporation (*Archer & Greiner,* attorneys).

PER CURIAM.

The central dispute in this case is whether a surety to a defaulted performance bond can be bound by an arbitration award entered against its principal and confirmed on appeal when the surety did not appear in the arbitration proceedings. Resolving this dispute calls upon us to consider and determine the standards that should govern the notice and opportunity to appear in such arbitration proceedings that must be given the surety in order to render the resulting arbitration award binding upon it.

Defendant-respondent First Indemnity of America Insurance Company (FIA) was surety for two performance and payment bonds supporting its principal's subcontracts with plaintiff-appellant, Raymond International Builders, Inc. (Raymond). The principal failed to complete the performance secured by either bond. After default notices were sent to the principal and

demand for completion was made unsuccessfully on the surety, Raymond completed the work and served an Arbitration Demand, pursuant to the subcontract, on the principal and its Assignee for the Benefit of Creditors. No Arbitration Demand was served on FIA. FIA was not named as a party to the arbitration. FIA was not served at that time with a copy of the Demand on its principal. At the same time, Raymond instituted suit against FIA to recover default damages on the surety bonds; its complaint made no mention of arbitration.

While FIA was answering Raymond's complaint and filing a third-party action for indemnity against the principal, Raymond was filing an Order to Show Cause to compel arbitration and to appoint an arbitrator in the principal's stead. On the return date of the Show Cause Order, the court appointed an arbitrator to serve as the principal's designee and directed that arbitration begin. Despite Raymond's awareness of the principal's assignee's intention not to appear, FIA was notified of none of the arbitration-related occurrences.

Approximately three weeks prior to the arbitration, Raymond invited FIA by letter to "attend and participate at the aforesaid arbitration proceeding as surety...." Attached to this letter was the Demand for Arbitration served upon the principal. After further communication to the surety about a change in the location of the hearing, arbitration proceeded in the absence of the principal, the principal's assignee, and the surety.

The arbitrators awarded Raymond $568,611.22 plus interest, which award was converted to a judgment pursuant to Raymond's motion; FIA had no notice of the confirmation application. Raymond then filed a motion for summary judgment based on the arbitration award for the relief sought in its complaint against FIA. Despite certifications that the arbitration award was based on work not covered by the FIA bond, that damages could have been mitigated, and that costs were greatly overstated, the trial court granted Raymond's motion.

The trial court's decision turned on its reading of the implications of this Court's decision in *Monmouth Lumber Co. v. Indemnity Insurance Co. of North America*, 21 *N.J.* 439 (1956), which held that a surety "who has merely undertaken to be responsible for the debts or defaults of the principal and who has not been given the opportunity to defend" is not conclusively bound by a judgment against the principal. *Monmouth Lumber Co., supra*, 21 *N.J.* at 446, *quoted in Raymond Int'l Builders v. First Indemn. of Am. Ins. Co.*, No. L–62208–83, slip op. at 1–2 (Law Div. Nov. 8, 1984). A corollary, however, of the duty to afford an opportunity to defend, the trial court reasoned, is the duty to defend when there is an opportunity. Because the surety in this case was not a direct party to the arbitration agreement, the trial court concluded that it was not subject to compulsory joinder; because the surety was aware of the arbitration proceeding, however, and could have joined that proceeding but did not, the trial court concluded that it had violated its duty to defend when it had notice and an opportunity to defend.

The Appellate Division, in an unreported opinion, reversed and remanded for trial on the grounds that FIA was afforded neither adequate notice of its principal's failure to participate in the arbitration, nor sufficient opportunity to defend its claim in the arbitration proceeding. The court below found that "the trial judge overlooked any obligation on the part of the plaintiff-creditor to advise the defendant-surety, the only true obligor ... that the principal was not honoring the arbitration clause and that it would not defend the arbitration claim." The primary duty imposed by this Court in *Monmouth Lumber*, the Appellate Division concluded, was the duty of the plaintiff-creditor to afford adequate and timely notice to the surety, which in this case, "[i]n view of [the principal's] default under the arbitration clause," entailed joining defendant as the real party in interest in the action to compel arbitration. Because we agree that the notice afforded FIA was inadequate, we affirm the court below. However, we are unwilling to conclude that,

in addition to providing adequate notice and opportunity to defend, the creditor was required to join the surety as an indispensable or necessary party subject to the requirements of compulsory joinder, as suggested by the Appellate Division.

The Appellate Division's differences with the trial court distill to the issue of whether the notice in this case was sufficient to afford FIA an opportunity to defend itself in the arbitration proceeding. The trial court concluded that the notice was sufficient because plaintiff's inability to join the surety triggered the surety's concomitant obligation to join of its own volition. The Appellate Division concluded that the notice was insufficient because under the authority of *Monmouth Lumber* joinder of the surety was compulsory and, by implication, that inadequate notice could not trigger the obligations of compulsory joinder. We conclude that, contrary to the Appellate Division's interpretation, *Monmouth Lumber* does not mandate joinder of sureties, but that, contrary to the trial court's holding, the notice and opportunity afforded here was nonetheless inadequate.

▅▅▅ There is no question that actual joinder of the surety will by definition serve to provide adequate notice and opportunity under *Monmouth Lumber*; that, after all, is what Chief Justice Vanderbilt required:

> Here it was as much the obligation of the creditor where it had knowledge of the bond to join the surety ... as it was the obligation of the surety when it learned of the pending suit ... to come in and defend. [21 *N.J.* at 447–48.]

The implication that arises from this passage is that joinder on the part of the surety is voluntary or permissive, rather than mandatory. A further implication is that the surety's decision to forego joinder in the face of adequate notice and a request or demand for joinder will result in its being bound by the results of the arbitration proceedings. Consequently, the proposition that nonjoinder under any circumstances is tantamount to inadequate notice does not obtain. It is not difficult to envision cases in which notice and an opportunity to defend will be sufficient even though the surety has not joined the proceed-

ings. *See, e.g., Kearsarge Metallurgical Corp. v. Peerless Ins. Co.,* 383 *Mass.* 162, 168 n. 9, 418 *N.E.*2d 580, 582 n. 9 (Sup.Ct. 1984) (demands for arbitration sent to both principal and surety; "the surety repeatedly was given notice of the arbitration proceedings, and chose not to participate"); *Von Eng'g Co. v. R.W. Roberts Constr. Co.,* 457 *So.*2d 1080 (Fla.App. 5th Dist. 1984) (principal and surety moved to compel arbitration; obligee then demanded arbitration, which Demand was sent only to the principal; confirmation of arbitration award sent to both); *see also P.R. Post Corp. v. Maryland Casualty Co.,* 403 *Mich.* 543, 271 *N.W.*2d 521 (1978) (where defendant received notice of neither principal's contract to arbitrate nor the hearing, and was not made a party, but was notified of the principal's default after the hearing, notice was insufficient for liability to have been conclusive). The notice and opportunity afforded in this case, however, was inadequate for precisely the reasons set out in the Appellate Division's opinion. The creditor-plaintiff failed either to inform FIA of or to name FIA in (1) the initial Arbitration Demand until three weeks before the arbitration, (2) any of the pre-arbitration motions, and (3) the application to confirm the award. The only "notice" and "opportunity" afforded was the letter allowing at best three weeks to prepare to defend a claim worth $800,000, and even this letter omitted the plaintiff-creditor's knowledge that the principal had no intention of appointing its own arbitrator or even of appearing at the hearing.

The trial and appellate courts reached diametrically opposed conclusions as to whether FIA could have been joined in an action to compel arbitration; the trial court's conclusion that FIA should have joined was premised upon its belief that FIA could not be compelled, while the Appellate Division's conclusion that joinder was mandatory assumed that compulsion was possible. While numerous authorities have held a non-party surety bound by an arbitration award despite the surety's nonparticipation in the arbitration proceeding, the case law is divided on the narrower issue of whether joinder of the surety

could or should be required or compelled. *See Fidelity & Deposit Co. of Maryland v. Parsons & Whitemore Contractors Corp.*, 48 *N.Y.*2d 127, 132, 397 *N.E.*2d 380, 383, 421 *N.Y.S.* 2d 869, 872–73 (Ct.App.1979) ("It may be that Fidelity could not be compelled to participate in that arbitration ... or ... that fidelity could not force its way into the arbitration proceedings.... Those issues, however, are not before us"; *cf.* dissent of Cooke, C.J.: "The incorporation of the subcontract and the language of the arbitration clause necessarily require that fidelity be a party...."). *But cf. Exchange Mut. Ins. Co. v. Haskell Co.*, 742 *F.*2d 274, 276 (6th Cir.1984) (surety compelled to arbitrate by virtue of incorporation by reference of subcontract in surety bond).

We need not reach this issue. We hold, instead, that there can be sufficient notice and an opportunity to defend even in the absence of outright joinder. It was not, therefore, the failure to join FIA that rendered notice in this case deficient. Notice was deficient because Raymond made little effort to inform FIA of the arbitration proceeding, and because the effort it did make did not afford FIA time to prepare or information that would have alerted it to the need to prepare. Had Raymond made a good-faith effort to keep FIA informed at every stage of the arbitration proceeding—by forwarding copies of relevant Demands and Motions concurrently with their filing—this would be a different case. Since it did not, to uphold summary judgment against FIA would be to deny it the opportunity to present its defense on the facts in any forum.

For the reasons expressed, we affirm the judgment of the Appellate Division.

*For affirmance*—Chief Justice WILENTZ, and Justices CLIFFORD, HANDLER, POLLOCK, O'HERN, GARIBALDI and STEIN—7.

*For reversal*—None.