222 N.J. Super. 409 (1988)
537 A.2d 310
SEABOARD SURETY COMPANY AND FEDERAL INSURANCE COMPANY, PLAINTIFFS-RESPONDENTS,
v.
BOARD OF CHOSEN FREEHOLDERS OF THE COUNTY OF WARREN, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued January 5, 1988.
Decided February 2, 1988.
*410 Before Judges PRESSLER, BILDER and SKILLMAN.
James A. Scarpone argued the cause for appellant (Scarpone & Edelson, attorneys; David E. Shaver, on the brief).
Robert W. McCann argued the cause for respondent Seaboard Surety Company (Klotz & McCann, attorneys; Richard J. Allen, Jr., on the brief).
*411 Roger P. Sauer argued the cause for respondent Federal Insurance Company (Lum, Hoens, Abeles, Conant & Danzis, attorneys; Roger P. Sauer, of counsel; Dennis B. O'Brien, on the brief).
The opinion of the court was delivered by PRESSLER, P.J.A.D.
This controversy arises out of contracts entered into by defendant County of Warren with a group of eight prime contractors for the construction of a new county correctional facility. A consolidated arbitration proceeding is presently pending to which the County and all prime contractors are named parties. During the pendency of the arbitration proceeding but before the holding of any hearings, two of the contractors against whom the County had asserted claims in arbitration, Roanoke Iron and Bridge Works, Inc. and Universal Tank & Iron Works, Inc., became insolvent and bankruptcy proceedings were commenced. Consequently and by operation of federal law, the further prosecution of the arbitration proceedings against these two contractors was automatically stayed. The underlying issue raised by this appeal is whether plaintiffs, who are their respective sureties and each of whom issued a performance bond to the County as required by state law, can either be compelled to arbitrate in their stead or be bound by the arbitration award without participating in the arbitration proceedings.
The trial court entered judgment declaring that the sureties have a contractual obligation to arbitrate and that each had received "sufficient notice of and opportunity to defend the demands for arbitration served upon them by the county." The judgment, however, stayed performance of the sureties' arbitration obligation until the determination in the bankruptcy proceedings of the obligations of each of the contractors to the county or until entry of an order in the bankruptcy proceedings vacating the automatic stay of the arbitration. The County *412 appeals from the stay provision of the judgment. Neither surety has cross-appealed.
The critical facts are largely undisputed. On January 12, 1983 the County entered into a contract with Universal Tank & Iron Works, Inc. for the supply and installation of water supply systems for the proposed correctional facility at the bid price of $226,649. On the same day plaintiff Federal Insurance Company issued a performance bond in favor of the County in that amount. On August 31, 1983 the County entered into a contract with Roanoke Iron & Bridge Works, Inc. for the supply and installation of prison and detention equipment at the bid price of $787,000, and on the same day, plaintiff Seaboard Surety Company issued its performance bond in favor of the County in that amount.[1] All eight prime contracts, including these two, were in standard American Institute of Architects form and contained a provision binding the parties to arbitration by the American Arbitration Association of all contractual disputes.
In May 1985 one of the other contractors, Soldo Construction Co., Inc., filed a demand for arbitration against the County. The County responded in September 1985 by filing a counter-demand against Soldo and by filing its own demands against the other seven contractors, most of whom, including Universal Tank, then filed a counter-demand. The arbitration proceeding continued through its various prehearing stages, all eight contractors, including Roanoke and Universal Tank, actively participating. In June 1986 all of the various arbitration demands and counter-demands were consolidated by the American Arbitration Association for determination by a single panel of arbitrators. In September 1986 respective counsel for Roanoke and Universal Tank advised the County that their clients had *413 become debtors in federal bankruptcy proceedings  Roanoke in Virginia and Universal Tank in Indiana.
During the next two months, the County attempted to obtain the consent of each of the two contractors to the continuation of the arbitration despite the automatic stay of proceedings against them. By mid-November 1986 both had refused to do so. In the meantime, in mid-October 1986, the County wrote to each of the sureties informing it of the pendency of the consolidated arbitration proceeding, advising it of its venue and docket number, and further advising that, "[t]his letter will serve as the County's formal notice to you that a claim has been made by the County against the Principal on the Performance Bond." Seaboard, Roanoke's surety, replied to the County's notice by letter dated November 3, 1986, requesting, "[i]n order that Seaboard may be better apprised of the issues involved in said arbitration," that the County "furnish us with copies of the claims made by the respective parties, the dates these claims were filed, and advise whether any hearings have been held to date in the subject arbitration." The record does not indicate a response to the notice by Federal, Universal Tank's surety. In any event, by mid-November the County was advised by the two insolvent contractors that neither would consent to continued participation in the arbitration proceeding, and the County forthwith filed an arbitration demand against each of the sureties, seeking to have them arbitrate in the place and stead of their principals.
As of the time the County served its arbitration demands on the sureties, no formal hearings had yet taken place in the consolidated arbitration proceedings, which were still at a relatively preliminary stage. According to the County, shortly after the demands were served, a preliminary conference was held for the purpose of fixing a schedule for the submission of written claims by the parties and the tentative setting of hearing dates. The County, pursuant to the schedule, served its claims against the principals upon the sureties. Thereafter, so the County alleges without dispute, the sureties have received *414 "copies of all correspondence, statement of claims, and any other documents emanating from or submitted to the American Arbitration Association since the filing of the County's Arbitration demand." As we further understand the record, the sureties did not respond to any of these documents or notices, did not attend any of the arbitrators' procedural conferences, and did not attend any of the hearings which, according to the record, commenced in June 1987 and were still ongoing at the time of oral argument of this appeal.
The first significant response of Seaboard was to obtain an order to show cause in January 1987, supported by a verified complaint joining not only the County as a defendant but also its principal, Roanoke, which it already knew to be protected by the automatic stay against litigation provided for by 11 U.S.C.A. § 362. The relief sought by the verified complaint was a judgment declaring that it would not be bound by the decision of the arbitrators, that it was not required to arbitrate, and that its obligations were only adjudicatable by a court of chancery. The order to show cause set a return date of February 26, 1987. The County filed and served its answer and counterclaim at the end of January 1987, the counterclaim seeking an adjudication that the surety would be bound by the arbitration and had an independent contractual duty to arbitrate.
On January 29, 1987 the court, apparently on its own motion, entered an order placing the action on the inactive list by reason of the pending bankruptcy proceedings against Roanoke. The County moved for reconsideration, urging that while the case could not proceed against Roanoke, the pending bankruptcy proceeding did not affect the continued prosecution of the dispute between it and Roanoke's surety, Seaboard. Judge Diana, who heard the motion, which Seaboard contested, agreed and accordingly entered an order in March 1987 severing the claims against Roanoke, restoring the action as between Seaboard and the County to the active calendar, and transferring the matter to the Law Division. Judge Diana explained his reasons for his ruling in a letter opinion in which he relied on *415 Lynch v. Johns-Manville Sales Corp., 710 F.2d 1194, 1196 (6th Cir.1983), which held that "[i]t is universally acknowledged that an automatic stay of proceeding accorded by [11 U.S.C.A.] § 362 may not be invoked by entities such as sureties, guarantors, co-obligors, or others with a similar legal or factual nexus to the Chapter 11 debtor." It is also significant to note that Judge Diana also concluded that Raymond Intern. Bldrs. v. First Indem. of America, 104 N.J. 182 (1986), an opinion whose relevance we address hereafter and which was then relied on by Seaboard, had no applicability at that stage of the proceedings.
Following the transfer of the action to the Law Division, it was consolidated with Federal Insurance Company's parallel action, which it had commenced in March 1987 and to which the County had responded in the same manner as its response to Seaboard's action. A bench trial, based on the relevant documents and stipulations, was conducted on April 16, 1987. Despite the contrary import of Judge Diana's earlier ruling and the principle expressed by Lynch, on which he had relied, the Law Division judge, relying on Salitan v. Magnus, 62 N.J. Super. 323 (App.Div. 1960), certif. den. 33 N.J. 388 (1960), concluded that the arbitration proceedings against the sureties were required to be stayed. He also concluded, apparently applying Raymond Intern. Bldrs., that the sureties had received adequate notice to justify their being bound by the arbitration proceedings and that they also had an independent contractual duty to arbitrate. The County appealed the stay order and, as we have noted, neither surety cross-appealed from the other provisions of the order.
We address first the stay order, which we conclude was entered in error. Judge Diana's reliance on Lynch, supra, was eminently appropriate. The law is well settled that the automatic stay provided for by the bankruptcy law extends only to claims against the debtor himself and not against others, including sureties, whose liability to the creditor for the obligations of the debtor has an independent basis. See cases collected in Lynch, supra, 710 F.2d at 1197. And see Browning Seed, Inc. *416 v. Bayles, 812 F.2d 999, 1004 (5th Cir.1987); Otoe County Nat. Bank v. W & P Trucking, Inc., 754 F.2d 881, 883 (10th Cir.1985); Allegheny Intern. v. Bio-Energy of Lincoln, 21 Mass. App. Ct. 155, 485 N.E.2d 965, 967 (App.Ct. 1985), review den. 396 Mass. 1105, 488 N.E.2d 1179 (Sup.Ct. 1986); Klimek v. Continental Ins. Co., 76 Or. App. 643, 711 P.2d 155, 158 (Ct.App. 1985), review den. 301 Or. 338, 722 P.2d 737 (Sup.Ct. 1986).
Moreover, Salitan v. Magnus, relied on by the trial judge, does not hold to the contrary but rather is entirely consistent with the universal rule. Salitan, an action by the creditor against the bankrupt's guarantor, was tried in the state court of New Jersey after the Third Circuit Court of Appeals had reversed an injunction issued by the federal district court which had barred the creditor from so proceeding. See In re Magnus Harmonica Corporation, 237 F.2d 867 (3d Cir.1956) and 233 F.2d 803 (3d Cir.1956). This court so recognized in its recitation of the procedural history in Salitan, where we noted that the Third Circuit had "held that the jurisdiction of the bankruptcy court, which had full control over the assets of the bankrupt, was unaffected by what went on outside the bankruptcy court in litigation between one of the bankrupt's creditors and a party independently liable on one of its contracts * * * The instant suit was thus permitted to proceed."[2] 62 N.J. Super. at 329. We are persuaded therefore that the stay was not required pursuant to 11 U.S.C.A. § 362 and the Supremacy Clause of the federal constitution, Article VI, cl. 2.
The sureties argue that even if the stay is not constitutionally required, it was correctly ordered as a matter of comity in the *417 interests of proper case management and in the interests of avoiding inconsistent results. It contends, in short, that the bankruptcy proceedings now pending in Virginia against Roanoke and in Indiana against Universal Tank offer the most efficient forums for the adjudication of the County's claims against these two contractors.[3] We disagree. The County is making no claims against the contractors in this litigation. It is making claims against the sureties on their independent obligations, and we are persuaded that as a matter of commercial reality and public policy, it must be permitted to do so without regard to and unaffected by the pending bankruptcy proceedings.
First, it is obvious that a creditor who secures further assurance of the debtor's performance by way of a separate and enforceable contract of guaranty or surety with a third party does so, at least in part, in contemplation of the debtor's possible insolvency. That is, at least, one of the primary risks against which the undertaking by the guaranty or surety is intended to protect. To require the creditor first to submit to the jurisdiction of the bankruptcy court or to await that court's determination of the debtor's underlying obligation would be to deprive him in substantial measure of the protection the third party undertaking was intended to afford. We see no justification for this dilution of the rights of the creditor against the third party. The surety may be entitled to raise all of the substantive defenses which the debtor has against the creditor, *418 but this does not necessarily entitle him to the benefit of the debtor's unique procedural posture.
The independent right of the creditor to proceed forthwith against the surety notwithstanding the pendency of bankruptcy proceedings against the principal debtor is, moreover, necessary to vindicate the public interest when the surety has given a statutorily required bond to secure a public entity engaged in public works contracting. The bonds issued by the sureties here were mandated by N.J.S.A. 2A:44-143 to 147, inclusive, the Public Works Bond Act. It is well settled that "[t]he bond is required primarily for the benefit of the public agency or body for which the work is being done * * *" Samuel Braen's Sons, etc. v. Fondo, 52 N.J. Super. 188 (App.Div. 1958). See also Hartford Fire Ins. Co. v. Riefolo Constr. Co., 81 N.J. 514, 525-526 (1980). It is, moreover, clear that a major risk against which the public requires protection is the insolvency of the contractor prior to its completion of the work contracted for. See, e.g., Warren Bros. Co. v. Hartford, etc., Co., 102 N.J.L. 616, 618 (E. & A. 1926). The purpose for which the bond is given would therefore be substantially abrogated if the public body were deprived of its right of immediate recourse against the surety. Nor is there any countervailing necessity for deferring that recourse until the conclusion of the bankruptcy proceeding. As we have noted, the surety is entitled to raise all of the principal debtor's substantive defenses in the proceeding brought by the public entity. See, e.g., Monmouth Lumber Co. v. Indemnity Ins. Co. of N. America, 21 N.J. 439 (1956). In sum, we conclude that the public policy interests implicated by the surety's bond obligations predominate over the possibility of ultimately inconsistent adjudications respecting the underlying obligation of the principal debtor.
Having determined that the stay was improvidently granted, we address the consequences of our vacation of the stay. In this regard and particularly since there is no cross-appeal, we need go no further than Raymond Intern. Bldrs. v. *419 First Indem. of America, 104 N.J. 182 (1986). The issue there, as stated by the Supreme Court, was whether a surety can be bound by an arbitration award entered against its principal when the principal did not participate in the arbitration proceedings. In resolving the issue, the Court was dealing, as here, with a surety whose contract with the creditor incorporated the contract between the principal and the creditor but did not itself include an express arbitration provision. The Court did not deem it necessary to decide whether, in those circumstances, the surety is subject to joinder by the creditor in an arbitration proceeding initially brought against the principal pursuant to the creditor-principal contract. What we understand the Court to have held is that in any event the surety may voluntarily choose to submit to the arbitration in the place of the principal and whether or not it does, it will be bound by the arbitration award against the principal if it was adequately noticed of the arbitration proceeding, afforded the time and information necessary to prepare for arbitration and kept informed at every stage of the arbitration proceeding. We are satisfied by this record that the County was diligent in complying with all of these due process requirements and, hence, that the trial judge was entirely justified in concluding that the County's notice to the sureties was in all respects adequate. We therefore conclude that the sureties ignored the arbitration at their peril. We note, however, that the arbitration is still ongoing, and at oral argument it was represented to us by the County that its claims against the principals of these sureties had not yet been presented to the arbitrators. The sureties may still, therefore, have the opportunity to defend against those claims in the arbitration proceeding, in which their recourse now lies. Those, however, are matters for the arbitrators and not the courts.
The provision of the judgment appealed from staying the arbitration proceedings and its consequence in respect of plaintiffs is vacated.
NOTES
[1] Both sureties also issued labor and materials payment bonds, not here in issue.
[2] It appears that the trial judge may have been misled by the holding of Salitan, which applied to the state court action substantive federal bankruptcy law respecting the running of post-petition interest.
[3] The County, as we understand it, having been joined in the Virginia Bankruptcy Court proceedings by Seaboard, moved for dismissal as against it on jurisdictional grounds. As of the date of oral argument, the motion had not yet been decided. We have since been provided with a copy of the Bankruptcy Court's order denying the County's motion together with the court's opinion which bases its declination to abstain on the Law Division's stay order which we now reverse. We are satisfied, however, that the Bankruptcy Court order in no way affects either our determination of this appeal or our rationale therefor.