Toomey, J.
Introduction
The plaintiffs, Trustees of the Fieldstone Condominium Trust (“the Trustees”), brought this action in equity to establish that defendant Gary Coffman (“Coffman”) owes a debt to the Fieldstone Condominium Trust (“the Trust”), to establish a lien upon Coffman’s condominium unit, and to gain permission from this Court to sell Coffman’s unit in order to collect the amount owed. The matter is before the Court on the Trustees’ motion for summary judgment, assessment of damages, and entry of findings and order. For reasons stated, the motion is allowed.
Background
Coffman owns unit number 10 of the Fieldstone Condominiums (“Fieldstone”). Fieldstone was established, pursuant to G.L.c. 183A, by a Master Deed dated September 28, 1987. The Trust was contemporaneously established on September 28, 1987 by a Declaration Of Trust With By-Laws. Coffman acquired title to unit number 10 on November 11, 1987. Defendant Grafton Suburban Credit Union holds a first mortgage on the unit.
Section 5.2 of the Declaration of Trust directs the Trustees to assess each condominium unit its share of the common condominium expenses. Pursuant to that directive, the Trustees assessed Coffman’s unit a proportionate share of the common expenses. Coffman has failed to pay the common assessments since January 1, 1992. The common expenses balance due as of May 1, 1995 was $5,244.63. The balance will increase by $152.39 on the first of every subsequent month.
Section 5.4 of the Declaration of Trust directs the Trustees to impose a late charge of $25.00 on all payments that are more than 15 days overdue. In accordance with that directive, the Trustees have assessed late fees of $25.00 per month for each month the common expense charge was not paid by the fifteenth of the month. As of April 15, 1995, the late fees totalled $1,000.00. Coffman has also failed to pay two special assessments of $100.00 each which were due in September and October, 1993. The Trustees have spent $2,977.75 in costs and attorneys fees pursuing this action.
The Trustees now seek a judgment for the common expense arrearage, late fees, costs and attorney fees, and for continuing charges as they accumulate on the first and fifteenth of each month. The Trustees also request a lien against Coffman’s unit for the amount of the judgment and a judicial determination that the lien has priority over other liens as provided by G.L.c. 183A §6(c). Finally, the Trustees ask the Court’s permission to sell Coffman’s unit to collect the amount owed.
DISCUSSION
Summary judgment shall be granted where there are no genuine issues as to any material fact and where the moving party is entitled to judgment as a matter of law. Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976); MassR.Civ.P. 56(c). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue “and [further,] that the moving party is entitled to judgment as a matter of law.” Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989).
Coffman does not dispute the Trustees’ view of the facts as stated herein. Rather, he has asserted two arguments in support of his position that the judgment requested by the Trustees should not enter. First, Coffman asserts that, in retaliation for a suit Coffman brought against the Trust, the Trustees have refused to repair his unit, and that the failure to repair has rendered Coffman unable to sell his unit and pay his debt. Second, he claims that the late fees charged by the Trust are usurious. Neither argument is persuasive.
A. Failure to Repair
G.L.c. 183 A, §7 provides that:
No unit owner may exempt himself from liability for his contribution toward common expenses by waiver of the use or enj oyment of any of the common areas and facilities or by abandonment of the unit or otherwise; and no unit owner shall be entitled to *698 an offset, deduction, or waiver of common expenses or other charges levied or lawfully assessed by the organization of unit owners.
In enacting §7, the Legislature codified the decision of the Supreme Judicial Court in Trustees of Prince Condominium. Trust v. Prosser, 412 Mass. 723 (1992). Analyzing whether a unit owner is entitled to an offset of common expense charges, the Court had stated that, because a unit owner’s refusal to pay “would threaten the financial integrity of the entire condominium operation,” a unit owner’s grievance against condominium trustees may not exempt the owner from the collection of lawfully assessed common area expense charges. Id. at 725-26.
Coffman asserts that he does not have to pay the fees because the Trustees have thwarted his attempts to sell his unit. The law is clear, however, that, as a unit owner, Coffman is not entitled to set-off from the assessments and fees he owes the Trust any debt the Trustees incurred to him by their inaction. Therefore, Coffman’s assertion of a grievance against the Trustees is not a valid defense to this action.
B. The Defense of Usury
The Massachusetts Appeals Court has held that, pursuant to G.L.c. 183A, §7, a condominium unit owner may not challenge the lawfulness of a common expense assessment by refusing to pay it. Blood v. Edgar’s, Inc., 36 Mass.App.Ct. 402, 406 (1994). Rather, the unit owner must pay the assessment under protest and thereafter seek a judicial determination of its legality and suitable reimbursement. Id. The Appeals Court held, however, that the Blood rule would not apply retroactively. Id. Accordingly, because the Trustees brought this action against Coffman prior to the Blood decision, the Blood principle may not be applied to this case, and Coffman would not be required to pay the charges if they were illegal. We must, therefore, assess the legality of the instant late fees.
Coffman asserts that the late fees are illegal by reason of their usurious quality. If the fees are usurious, Coffman would not be required to pay them.
G.L.c. 271, §49(a), the Massachusetts criminal usury statute, provides that:
Whoever in exchange for either a loan of money or other property knowingly contracts for, charges, takes or receives, directly or indirectly, interest and expenses the aggregate of which exceeds an amount greater than twenty per centum per annum upon the sum loaned or the equivalent rate for a longer or shorter period, shall be guilty of criminal usury . . . For the purpose of this section the amount to be paid upon any loan for interest or expenses shall include all sums paid or to be paid by or on behalf of the borrower for interest, brokerage, recording fees, commissions, services, extension of loans, forbearance to enforce payment, and all other sums charged against or paid or to be paid by the borrower for making or securing directly or indirectly the loan . . .
Charges for overdue payments, as well as for attorneys fees, are included in determining whether an interest rate exceeds 20% per annum. Begelferv. Negarían, 381 Mass. 177, 182, 189 (1980).
The usuiy statute, by its own language, does not apply to transactions other than loans of money or property. See Allegheny International Credit Corp. v. Bio-Energy of Lincoln, Inc., 21 Mass.App.Ct. 155 (1985) (holding that the usury statute does not apply to leases). The fees assessed against Coffman by the Trustees do not arise out of a loan of money or property. Therefore, the fees are not rendered unlawful by the usury statute and Coffman is not excused under pre-Blood analysis from paying said fees.
Because the fees assessed by the Trustees against Coffman are lawful and he has no reason not to pay them, judgment must enter for the Trustees.
DAMAGES
G.L.c. 183A, §6 allows the Trustees to assess against Coffman expenses incurred “as a result of the unit owners failure to abide by the requirements of this chapter or the requirements of any master deed, trust, by-laws, restrictions, rules or regulations.” The Trustees may also assess “any fees, attorneys fees, charges, late charges, fines, cost of collection and enforcement, court costs and interest charged pursuant to this chapter against the unit owner.” Id.
As of May 1, 1995, sums to the Trust: Coffman owed the following
Charges Total
Monthly Assessments
January, 1992 99.00/month $ 99.00
February to December, 1992 115.50/month 1,270.50
January to December, 1993 107.00/month 1,284.00
January, 1994 to May, 1995 152.39/month 2,590.63
Special Assessments September, 1993 100.00 100.00
October, 1993 100.00 100.00
Late fees
January, 1992 to April, 1995 25.00/month 1,000.00
Other
Attorneys fees and collection costs 2,977.75 2.977.75
TOTAL: $9,421.88
In addition, common fee costs continue to accumulate on the first of every month in the amount of $152.39. Late fees continue to accumulate on the fifteenth of every month in the amount of $25.00.
By statute, these expenses constitute a lien against the unit. G.L.c. 183A, §6(a)(ii). A lien is therefore established for the total amount owed.
*699 G.L.c. 183A, §6(c) gives the lien hereby established priority over “all other liens and encumbrances . . . except (i) liens and encumbrances recorded before the recordation of the master deed, (ii) a first mortgage on the unit recorded before the date on which the assessment sought to be enforced became delinquent, and (iii) and liens for real estate taxes and other municipal assessments or charges against the unit.” Additionally, the lien has priority over a first mortgage to the extent of common expense assessments which became due during the six months immediately preceding the institution of this action. G.L.c. 183A, §6(c). Finally, the portion of the lien arising from attorneys fees has priority over a first mortgage if notice, as specified by statute, was sent to the first mortgagee. Id.
Common expenses were assessed in the amount of $884.50 for July, 1992 through January, 1993, the six months preceding the institution of this action. The Trust’s lien, accordingly, has priority over the first mortgage in the amount of $884.50. The Trustees sent the notice, required by statute, to the first mortgagee; consequently, the Trust’s lien also has a priority for costs and attorneys fees in the amount of $2,977.75.
G.L.c. 254, §5A allows the Trust to collect the amount of its lien by selling the condominium unit after complying with the notice requirements of G.L.c. 254, §§5 and 5A. Because expenses incurred by the Trust in selling the unit will be incurred as a result of Coffman’s failure to pay the common expense assessment, he is liable to the Trust for the expenses of sale. G.L.c. 183A, §6(a)(ii). Such expenses include advertising costs, auctioneer fees, and attorneys fees.
ORDER
For the reasons stated supra, it is hereby ORDERED that the plaintiffs’ motion for summary judgment be GRANTED. It is furthered ORDERED that damages are awarded to the plaintiffs in the amount of $9,421.88. Said amount shall increase by $152.39 on June 1, 1995 and on the first of the every month thereafter, and by $25.00 on May 15, 1995 and the 15 th of every month thereafter for as long as Coffman remains as owner of the unit and in default of his obligations defined herein. It is further ORDERED that a lien be placed on Coffman’s condominium unit, and that said lien shall have the priority stated supra. It is further ORDERED that the plaintiffs may collect the amount owed to them by selling Coffman’s condominium unit, in the manner provided by law, and that Coffman shall be liable to them for the expenses, if any, associated with such sale.